CRAWFORD V. SPENCER et al., Appellants.

1.  Contract: SALE: DELIVERY: OPTION: WAGER. A sale of goods to be delivered in the future is valid, notwithstanding there is an option as to the time of delivery, and the seller has no other means of getting them than to go into the market and buy them.

2.  ———— : ———— : ———— : ———— : ————. But if, under the guise of such a contract, valid on its face, the real purpose and intention of the parties is merely to speculate in the rise, or fall, of prices, and the goods are not to be delivered, but the difference between the contract and market price only paid, then the transaction is a wager, and the contract is void.

3.  ———— : ———— : ———— : ———— : BURDEN OF PROOF. It is not enough to render the contract void, that one party only intended by it a speculation in prices. It must be shown that both parties did not intend a delivery of the goods, but contemplated, and intended, a settlement only of differences ; and the burden of showing the invalidity of the contract rests upon the party asserting it.

4.  ———— : ———— : ———— : ————. Where a broker is privy to the unlawful design of the parties to a wagering contract, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered, or losses incurred, by himself, on behalf of either party in forwarding the transaction.

5.  Gaming: OPTION DEALING: BONA FIDE HOLDER OF NOTE: STATUTE. The statutes (R. S., secs. 5721-2-3), making all notes where the con-

sideration is money, or property, won at any game, or gambling device, void, and providing that assignment of such a note shall not affect the defence, are designed to be in aid of the criminal law. Contracts based upon mere speculations on prices, as in this case, do not come within these statutes, and a note based upon such a contract, when assigned before maturity to a *bona fide* holder, without notice, is not void in his hands.

6. ——— : ——— : COLLATERAL: EQUITIES : NOTICE. Where a note based upon a wager contract is transferred as a collateral, and, at the time of the transfer, an extension of time is given for the payment of the principal debt, such extension constitutes the transferee a holder for value, for a new consideration, and he takes the note freed from equities existing between the original parties, of which he had no notice, the collateral not being due when transferred, and he can enforce such security to the extent of the amount of the debt due him from the transferer of the note.

7. Practice: BILL OF EXCEPTIONS, SKELETON OF. Where a bill of exceptions, as signed by the judge, consists of the testimony of witnesses, letters, etc., as taken down, and copied, by the stenographer, followed by a skeleton bill of exceptions, as "plaintiff was sworn as a witness, and testified as follows : [Here insert testimony of plaintiff]" ; and so of depositions and written motions, except the motion for new trial, which is copied in full, followed by the signature of the judge, the whole being attached together ; it is made out in compliance with the practice which prevails in this state, and is sufficient in all respects, and authorizes the clerk to fill up the skeleton bill with the evidence, depositions, and motions, when called for.

*Appeal from Jefferson Circuit Court.*—HON. JNO. W. EMERSON, Judge.

REVERSED AND REMANDED.

*Given Campbell* for appellants.

It is hardly necessary to cite authorities to prove that, being a member of the exchange, respondent is charged with notice of its rules. Morawetz on Corp., sec. 370, and cas. cit. in note ; *Simeral v. Ins. Co.*, 18

Ia. 322; *Coles v. Ins. Co.*, 18 Ia. 431; *Mitchell v. Ins. Co.*, 51 Pa. 402. We do not believe that any authority can be shown where a court of equity would undertake to require an innocent third holder of negotiable paper, for value, to surrender the same up for cancellation. Judge Treat, in the case of *Bank v. Harrison*, 10 Fed. Rep. 253, referring to negotiable paper given for option contracts, says: "It is obvious the law may be evaded by giving negotiable notes and having them indorsed to innocent parties, but the remedy is with the legislature." The case of *Collins v. Merrell*, 2 Met. [Ky.] 163, cited by respondent, was decided under a statute; and we think an examination of the case of *Knight v. Gregg*, 26 Tex. 506, also cited, will show that it has no application to this case.

*George D. Reynolds, Dinning & Byrns* and *W. H. H. Thomas* for respondent.

(1) The bill of exceptions is not properly before the court. The testimony in the case is not preserved by the bill of exceptions, and, consequently, is not before this court for review. *United States v. Gamble*, 10 Mo. 459; *Christy v. Myers*, 21 Mo. 114; *Blount v. Zink*, 55 Mo. 455; *Jefferson City v. Opel*, 67 Mo. 394; *Ober v. Railroad*, 13 Mo. App. 84; *Morrison v. Lehew*, 17 Mo. App. 633. (2) There is no error in the record proper to the prejudice of appellants, or entitling them to a reversal. The transaction was a gambling device, a wager contract, and the note and security taken were null and void. In this case, no such state of affairs exists as is disclosed by the record in *Cockrell v. Thompson*, 85 Mo. 510. *Irwin v. Williar*, 110 U. S. 499; *Cunningham v. Bank*, 71 Ga. 400; *Downing v. Ringen*, 7 Mo. 585; *Hayden v. Little*, 35 Mo. 418; *State v. Lemon*, 46 Mo. 375; *Porter v. Jones*, 52 Mo. 399; *Kitchen v. Greenabaum*, 61 Mo. 110; *Waterman v. Buckland*, 1 Mo. App. 47;

*Williams v. Tiedeman*, 6 Mo. App. 269; *Kent v. Miltenberger*, 13 Mo. App. 510; *McLean v. Stune*, 15 Mo. App. 317; *Ream v. Hamilton*, 15 Mo. App. 577. These wager contracts are gambling devices. Relief against such contracts has always been granted by courts of equity. *Bunn v. Richer*, 4 Johns. 426; *Mount v. Waite*, 7 Johns. 434; *Jeffrey v. Ficklin*, 3 Ark. 227; *Vischer v. Yates*, 11 Johns. 30; 1 Jones on Mort., sec. 617, and cas. cit.; 1 Story's Eq. Jur. [10 Ed.] secs. 298, 303; *Rucker v. Wynne*, 2 Head. [Tenn.] 617; *Skipworth v. Strother*, 3 Randolph [Va.] 24; *Tramwell v. Gordon*, 11 Ala. 656; *Baker v. Callahan*, 5 Ala. 708. Equity did often relieve against gambling contracts, previous to any legislation on the subject. *Lyon v. Respass*, 1 Littell [Ky.] 133; *Moffeet v. White*, *Ib.* 325; *Gill v. Webb*, 4 T. B. Mon. 299; *Finn v. Barclay*, 15 Ala. 626; *Collins v. Merrell*, 2 Metc. [Ky.] 163; *Knight v. Gregg*, 26 Tex. 506. The petition is not multifarious. *McGlothlin v. Henry*, 44 Mo. 350; *Clark v. Ins. Co.*, 68 Mo. 272. There was no misjoinder of defendants. Barbour on Parties, p. 455; *Brinkerhoff v. Brown*, 6 Johns. Ch. 138. Francis & Brother took the note to secure an antecedent indebtedness; no new consideration moved them. They, therefore, did not take it for value, but hold it subject to all the equities subsisting between the original parties to the note. Story on Bills, sec. 194; *Swift v. Tyson*, 16 Peters, 1; *Stalker v. McDonald*, 6 Hill, 9; *Coddington v. Bay*, 20 Johns. 637; *Anderson v. Nichols*, 28 N. J. 600; *Brown v. Tabor*, 5 Wend. 66; *De Witt v. Perkins*, 22 Wis. 475; *Hunt v. Sandford*, 6 Yerg. 387; *Goodman v. Simond*, 19 Mo. 106; *Hamilton v. Monks*, 52 Mo. 78; *Logan v. Smith*, 62 Mo. 455; *Skelling v. Bollman*, 73 Mo. 665; *Brainard v. Reaves*, 2 Mo. App. 490; 12 Cent. Law Jour. 26; 14 Cent. Law Jour. 462. Francis & Brother were proper and necessary parties, and were properly joined. If this court finds that the evidence is before them for review, we trust to an

examination of that to sustain the decree. It is true that all the parties who are claimed to be the ones with whom the deals were made testified that they, of course, intended a delivery or receipt of the hundreds of thousands of bushels of grain pretended to be bargained for. But, under cross-examination, the true nature of these transactions is brought out. That can always be done in such a case. 4 Black., sec. 158. "It is for the jury to determine whether the parties really meant to purchase or sell, or whether the transaction was a mere bet upon the future price of the commodity." Addison on Cont. [Morgan's Ed.] bk. 1, chap. 3, sec. 276. "Oral evidence may be given, and the parties themselves be examined, to show that a contract, purporting on the face of it to be a contract of sale, was a mere gaming contract, void *ab initio*, although the contract is in writing or under seal." *Collins v. Blantern*, 1 Smith Lead. Cas. [5 Ed.] 310. "In option contracts, where there is a doubt as to intent of parties as to delivery, the burden of proof is on the party claiming under it, to show that delivery was intended." *Cobb v. Prell*, 16 Cent. Law Jour. 452; s. c., 15 Fed. Rep. 774. Parol evidence is admissible. *Foster v. Reynolds*, 38 Mo. 553. The true intent, below all disguises, is to be sought for, and what that was is a question of fact. In this case, the lower court found the intent against appellants, and its finding is entitled to stand in this court. The presumption is that it is right. *Goode v. Crow*, 51 Mo. 212. Even in equity cases the appellate court will, with extreme reluctance, disturb a decree rendered by the trial court, on which there was conflicting evidence. *Sharp v. McPike*, 62 Mo. 300; *Davis v. Fox*, 59 Mo. 125; *Cornett v. Bertelsmann*, 61 Mo. 118; *Hendricks v. Woods*, 79 Mo. 590; *Ford v. Phillips*, 83 Mo. 523.

BLACK, J.—The plaintiff brought this suit to enjoin the proposed sale of real estate, under a deed of trust,

given by him to secure his note, dated the ninth of November, 1881, for five thousand dollars, due in one hundred days, and payable to the order of Harlow, Spencer & Company. The members of this firm were made defendants, by the petition, but it appearing that the note had been assigned to D. R. Francis & Brother, the members of that firm were brought in by amendment, and the suit proceeded against all these parties, and the trustee, to a final decree, as prayed for by the plaintiff.

The ground for relief is, that the note grew out of alleged gambling contracts, for the purchase and sale of wheat and corn. The evidence shows that the plaintiff, who resided at De Soto, in this state, had been, for some months prior to the date of the note, speculating in option deals in grain, through Harlow, Spencer & Company, brokers, at St. Louis, and, through them, he became a member of the Merchants' Exchange. At the date of the note, the brokers called upon the plaintiff for two thousand dollars margin, in addition to what he had before paid. At that time, they were indebted to him in the sum of $2,536, on account of closed transactions, but they were then carrying unclosed deals, upon which margins were due to them. On the entire account, it is clear that plaintiff owed them as much as two thousand dollars, and, perhaps, as much as five thousand dollars. Plaintiff was about to leave the state, on matters connected with his business as railroad contractor, and he states that he gave the note and deed of trust to them that they might use it to raise money if it became necessary so to do, on account of pending or future deals. Harlow, Spencer & Company say the note and deed of trust were given to them to secure them against loss, as the plaintiff desired to use his money in other business; and this, we conclude, was the real nature of the transaction, for it cannot be claimed but the brokers, at the date of the note, were entitled to at least two

thousand dollars, on account of the face of the then past and pending transactions.

Harlow, Spencer & Company failed, on the tenth of February, 1882. They then had contracts for twenty thousand bushels of May corn, and thirty thousand bushels of May wheat, which they had bought for plaintiff. They instructed the persons from whom they had purchased the grain to close out the deals, which was done, and an account rendered for the loss, which was settled by the brokers. Harlow, Spencer & Company then rendered an account to the plaintiff, showing a balance due to them of $7,128. When Harlow, Spencer & Company failed, they owed D. R. Francis & Brother, who were also brokers, some twenty-six thousand dollars, and they turned the plaintiff's note over to the latter firm, on account of that indebtedness.

There is much conflict in the direct evidence of the plaintiff and the members of the firm of Harlow, Spencer & Company, as to the real character of these transactions. The plaintiff says he became acquainted with a member of the firm, and, after frequent conversations as to the speculations then going on, he concluded to make some deals ; that it was the distinct understanding between him and the brokers that no grain would be delivered or received, but that differences only would be settled, and in this he is corroborated by the evidence of Mr. Norton, who was interested with the plaintiff in some of the early transactions. · Harlow, Spencer & Company say there was no such understanding, and that the deals were to be, and were, all made in good faith, and contemplated an actual delivery of the commodity, though delivery might be dispensed with. The brokers did buy and ship to plaintiff a small quantity of corn, for use, but that was paid for at the time, and does not enter into the transactions in question ; the difference between the manner in which that transaction was conducted and these in question is of some significance. It

is an undisputed fact in the case that not a grain of wheat or corn was ever delivered, under any of the contracts in question. They were all closed out and settled by the adjustment of differences, and in all cases before the maturity of the contracts. That they were all mere speculations is not denied. The plaintiff made, and intended to make, no arrangement for the delivery or reception of any of the grain, and this was, at all times, well known to the brokers. The brokers were engaged in an extensive business, many times in excess of the amount of produce handled by them. It was the especial duty of one of the firm to look after transactions like those in question. If we look to the bare assertion of the parties, on the one side and the other, we might well conclude that plaintiff has failed to make out a case ; but if we look to the attending circumstances, which we must do, we can but conclude that these transactions, as between the plaintiff and the brokers, were mere speculations upon the future price of wheat and corn, with a complete understanding, on the part of both, that no grain was, in any case, to be received or delivered. It is true the contracts were all made in the names of the brokers, the name of the real principal not appearing ; that they were in writing, and, under the rules of the exchange, the purchaser had the right to call for the commodity ; but they were made by the plaintiff's brokers, in compliance with their understanding with him, and it is believed with an implied understanding with the persons with whom the deals were made, that no grain was to be delivered.

The law is now well settled, that a sale of goods to be delivered in the future is valid ; such a contract is valid, though there is an option as to the time of delivery, and though the seller has no other means of getting them than to go into the market and buy them ; but if, under the guise of such a contract, valid on its face, the real purpose and intention of the parties is merely to spec-

ulate in the rise or fall of prices, and the goods are not to be delivered, but the difference between the contract and market price only paid, then the transaction is a wager, and the contract is void. It is not enough to render the contract void that one party only intended by it a speculation in prices; it must be shown that both parties did not intend a delivery of the goods, but contemplated and intended a settlement only of differences. The burden of showing the invalidity of the contract rests upon the party asserting it. *Irwin v. Williar*, 110 U. S. 499; *Cockrell v. Thompson*, 85 Mo. 510.

With respect to a suit by the brokers, for services rendered and moneys advanced for the principal, in procuring these wagering contracts, it was said, in *Irwin v. Williar*, 110 U. S. 499: "It is certainly true, that a broker might negotiate such a contract, without being privy to the illegal intent of the principal parties to it, which renders it void, and, in such a case, being innocent of any violation of law, and not suing to enforce an unlawful contract, has a meritorious ground for the recovery of compensation for services and advances. But we are also of the opinion that, when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself, on behalf of either, in forwarding the transactions." In the present case, the note was given by the plaintiff to the brokers, to protect and save the latter harmless because of these illegal transactions, then pending, and thereafter to be made. The illegal ventures were carried on by the brokers, in their own names, and they were parties thereto from first to last, parties to the agreements which made the contracts illegal. The case comes clearly within the principles asserted in the case last cited, where it is said, the brokers cannot recover.

In the case of *Cockrell v. Thompson*, 85 Mo. 513,

Cole Brothers were the brokers or factors. They made the ventures for Cockrell and Thompson. The deals were closed out, and Cockrell then settled with the brokers, and sued Thompson for one-half of the losses thus paid to Cole Brothers. From the report of the case, it would seem that the contracts for the purchase and sale of the wheat were made in the name of Thompson and Cockrell, by the factors. At all events, it was not alleged or shown that Cole Brothers did not make for Cockrell and Thompson valid contracts. There was no charge that any seller or buyer, who dealt with Cockrell and Thompson, through the brokers, did not intend to deliver or receive the wheat. It did not, therefore, appear, nor was it alleged, that the contracts made were illegal. In the present case, we are satisfied that it was not only the understanding, with plaintiff and his brokers, that the deals were mere speculations on prices, but that such was also the character of the contracts, as between the brokers and the persons with whom they made the contracts. There is, therefore, nothing in the *Cockrell–Thompson* case inconsistent with the principle of law before asserted. It follows that the plaintiff is entitled to the relief demanded, as against Harlow, Spencer & Company.

It remains to be seen, whether he is entitled to the relief as against Francis & Brother. We do not agree with counsel for the plaintiff, that the note is void in the hands of a *bona fide* endorsee, because of our statute upon the subject of gambling. These statutes, section 5721-2-3, Revised Statutes, 1879, make all notes, "where the consideration is money or property won at any game or gambling device," void. The assignment of such a note, the statute says, shall not affect the defence. Under these statutes, it was held, in *Hickerson v. Benson*, 8 Mo. 9, that a wager on the result of an election was not within their meaning. Subsequently, the statute was so amended (sec. 5726) as to include bets and wagers

·on elections, but the amendment does not include such ·contracts as those here in question. The sections of the statute before noted are evidently designed to be in aid of the criminal law. This much is said, in the case of *Williams v. Wall*, 60 Mo. 320. It cannot be said that contracts like those in question come within the provisions of the criminal statutes. These wagering contracts are void, not because prohibited by statute, but because they are against public policy. The note is not void in the hands of an indorsee before maturity, simply because based upon such a consideration. This is the view taken of the statute, in *Third National Bank v. Harrison*, 10 Fed. Rep. 243, and we believe it to be the correct one.

The evidence does not show that Francis & Brother had notice of the infirmity existing in the note when they took it, which was before maturity; nor is the validity of the debt due to them from Harlow, Spencer & Company fairly impeached. But the further claim is that they took the note as collateral security for a pre-existing debt, and, therefore, hold the note subject to any defence existing between the original parties. The proof is that Harlow, Spencer & Company owed Francis & Brother twenty-six thousand dollars, on open account. The day before Harlow, Spencer & Company failed, they gave to Francis & Brother notes, including the one in question, amounting to twelve thousand dollars, in payment of that amount of the indebtedness; this left fourteen thousand dollars unpaid, which was settled and paid at fifty cents on the dollar, and the entire account receipted in full. Afterwards, Harlow, Spencer & Company took up half of the notes by a cash payment; this left six thousand dollars of the notes, including the one in question, in the hands of Francis & Brother; some of the notes were small, and, to avoid protest fees, Harlow, Spencer & Company, who were endorsers, gave Francis & Brother their note, also, for six thousand dollars, the

latter retaining plaintiff's note. There is still due on this note from six hundred to two thousand dollars; the evidence is not definite in this respect.

In *Goodman v. Simonds*, 19 Mo. 107, it was said: "We do not say that a bill of exchange, passed to a person in payment of a preëxisting debt, would be liable in his hands, without notice, to the equities or defences of the original parties; but that the holder of a bill merely as collateral security for a preëxisting debt, having given no value for it, no consideration for it, holds it liable to such equities." This case was cited, but not mentioned in the opinion, in the subsequent case of *Boatman's Savings Institution v. Holland*, 38 Mo. 51. Subsequently, it was held that one who takes a note as collateral security for a debt *then* created, is a holder for value. *Logan v. Smith*, 62 Mo. 455. And still later it was held that if the creditor extends the time of the payment of the principal debt until the collateral shall become due, the agreement to delay constitutes the transferee of the collateral a holder for value. *Deere v. Marsden*, 88 Mo. 512. Where there is a new consideration at the time the collateral is given, such as the extension of the time of the payment of the principal debt, there can be no doubt but the transferee of the collateral takes it freed from equities existing between the original parties, of which he has no notice, the collateral not being due when transferred. Where there is no such new consideration, there is much conflict in the authorities. But in this case, we are satisfied that the notes, amounting to twelve thousand dollars, were taken in actual payment of that amount of the indebtedness of Harlow, Spencer & Company, and that being so, Francis & Brother took the note freed from the equities existing as between plaintiff and Harlow, Spencer & Company. Daniel on Neg. Inst. [3 Ed.] sec. 332.

It is true that, after Harlow, Spencer & Company gave Francis & Brother their note for six thousand dol-

lars, the plaintiff's note for five thousand dollars is spoken of as a collateral to the six thousand dollar note ; but we do not see that the giving of the new note, by Harlow, Spencer & Company, as a substitute for their endorsement, puts Francis & Brother in any worse condition than they were when they took plaintiff's note in payment of five thousand dollars. In any possible view of the case, payment of five thousand dollars of the indebtedness of Harlow, Spencer & Company to Francis & Brother was extended until the note in question matured, and had it been received by Francis & Brother as collateral security, and not in payment, the extension of time, under the authorities before cited, would have constituted them holders for value, for a new consideration. On the evidence, as it now stands in this case, Francis & Brother are entitled to enforce this security to the extent of the amount due to them from Harlow, Spencer & Company.

3. It is insisted by the plaintiff, respondent here, that the evidence is not preserved by the bill of exceptions, and, for that reason, the judgment should be affirmed. In obedience to a writ of *certiorari*, issued at the instance of the plaintiff, the clerk has sent up an exact copy of the bill of exceptions as it was when signed by the judge and filed in the court below. It consists of one hundred and seventy-two pages of testimony of witnesses, letters, and the like, as taken down and copied by the stenographer, attached together by means of strings. Then follows a skeleton bill of exceptions. As an example, it states : "Plaintiff was then sworn as a witness and testified as follows: [Here insert testimony of Samuel W. Crawford]" ; and so with the various witnesses and depositions and motions, except the motion for new trial, which is copied in full ; and then follows the signature of the judge. All these papers are attached together by another fastening. The

skeleton bill was made out in compliance with the practice which prevails in this state. The depositions and motions were sufficiently identified, and the evidence of the witnesses sworn in open court was written out, and actually attached to the skeleton bill. before the judge signed the same. No more could be desired. The bill is sufficient, in all respects. Under these circumstances, the clerk was authorized to fill up the skeleton bill with the evidence, depositions, and motions, when called for.

There is no need of a new hearing, so far as the members of the firm of Harlow, Spencer & Company are concerned, and the judgment is, therefore, as to Corwin B. Spencer, John F. Carpenter, and Thomas H. Morgan, affirmed; but, as to the other defendants, the judgment is reversed, and the cause remanded for a new hearing on the issues between them and the plaintiff. All concur.