Crawford v. Spencer.

SAMUEL W. CRAWFORD, Respondent, v. CORWIN H. SPENCER *et al.*, Appellants.

St. Louis Court of Appeals, April 29, 1889.

1. **Practice, Trial:** RECOVERY ON PETITION. A plaintiff must recover, if at all, on the cause of action stated in his petition, and not upon one which first appears in the reply. But if his recovery is based upon facts which have developed since the commencement of the suit, and are set up in the reply, and which are within the general scope of the petition and the relief prayed for, there need be no reversal on account of the stage at which such facts were pleaded. In such a case, the plaintiff's recovery of costs should be limited to those arising subsequently to the pleading of the new matter.

2. **Equity:** FINDING OF FACTS. Upon an issue in an equity proceeding, whether a note under consideration has, or has not, been paid, when the only evidence of payment consists of a loose statement made by one of the joint holders to the effect that they had no further interest in the litigation, and, on the other side, it was proved by a detailed account of all the transactions involved, supported by unquestioned testimony, that a balance yet remained due and unpaid, the finding of payment by the trial court cannot be sustained on appeal, upon a fair review of the evidence.

*Appeal from the Jefferson Circuit Court.*—HON. JOHN L. THOMAS, Judge.

REVERSED AND REMANDED.

*Hough, Overall & Judson,* for the appellants.

The record discloses fatal error, in that there is no issue of payment made by the pleadings upon which the decree can be supported. It is elemental that an issue cannot be made by the allegation of a new cause of action in the reply. The relief must be based upon the allegations in the petition. Boone Code Pl., sec. 105; Pom. Rem. & Rem. Rights, p. 644; Bliss Code Pl. [2 Ed.] sec. 396; 2 Dan. Chan. Pr. [5 Am. Ed.] p 961, and note of cases cited. The answer in this case was in effect only a general denial. There was no new matter alleged and there was no province for a reply. The

allegations of the answer, although affirmative in form, merely contradict the averment of the petition. *State v. Williams*, 48 Mo. 210; *Fritch v. Caylor*, 21 Cal. 71: *Goddard v. Fulton*, 21 Cal. 430; *Farish v. Johnston*, 27 Ind. 247; *State ex rel. v. Rau*, 93 Mo. 126. It is the sole province of a reply to meet new matter alleged in the answer, and it is not its province to introduce new causes of action. *Hastings v. Caldwell*, 16 Neb. 60; *Burden v. Fiske*, 16 Ohio St. 533; *Hatch v. Coddington*, 32 Minn. 92; *Burdell v. Denig*, 15 Fed. Rep. 397. A departure in the reply will not be permitted in any system which pays the least regard to the logic of pleading. Bliss Code Pl. (2 Ed.) sec. 296.

*George D. Reynolds* and *Dinning & Byrns*, for the respondent.

There was ample testimony to support the finding of the court that the principal note had been paid off since the commencement of the suit. In an equity case, where the trial court has the witnesses personally before it, and there is abundant evidence to sustain its finding of facts, or, where the evidence is conflicting, the supreme court will defer to the finding of the trial judge, unless he has manifestly disregarded the evidence. *Royle v. Jones*, 78 Mo. 403; *Judy v. Bank*, 81 Mo. 404; *Erskine v. Loewenstein*, 82 Mo. 301; *Snell v. Harrison*, 83 Mo. 652; *Bank v. Murray*, 88 Mo. 191. It was correct pleading to set up payment of the principal note since the institution of the suit, in the reply. Such practice is distinctly authorized by our statute. R. S. 1879, sec. 3535. "In rendering a judgment the court is not confined to the relief prayed for in the petition; it may very properly give judgment for anything consistent with the issues made by the pleadings and sustained by the proofs in the case, whether the same is asked for or not. But it cannot go entirely outside of the case for matters upon which to found its judgment. Had the defendant brought his petition to redeem on the ground

that the sale was illegal, or had he taken that position in his answer, then the court might have granted the request and imposed the terms that it did on the familiar principle that he who asks equity must do equity; or had the plaintiff sought such relief even in his replication, the court would have been justified in granting it." *White v. Rush*, 58 Mo 105. It is new matter arising since action brought, but connected with the subject-matter of the original action, and necessarily involved in the determination of the rights of the parties to the *corpus* in litigation. This is, therefore, no departure. Boone Code Pl., sec. 105; 2 Dan. Ch. Pr. (4 Ed.) ch. 26, sec. 1, p. 990.

THOMPSON, J., delivered the opinion of the court.

This case was before the supreme court on a former appeal and the decision of that court is reported in 92 Mo. 498. The action is by the maker of a promissory note for five thousand dollars, secured by a deed of trust on certain land, dated on the ninth day of November, 1881, due in one hundred days and payable to the order of Harlow, Spencer & Company, to enjoin the enforcement of the deed of trust, on the ground that the consideration of the note was certain gambling transactions consisting of what are known as "option deals," and that the defendants composing the firm of D. R. Francis & Brother, to whom the note was transferred by Harlow, Spencer & Company, took it under such circumstances that it was likewise invalid in their hands. The first trial resulted in a decree in favor of the plaintiff, awarding him the relief prayed for against all the defendants. The supreme court found on the evidence that the consideration of this note was gambling transactions and that the note was hence void as between the original parties to it. That court, therefore, affirmed the decree of the circuit court as against the defendants who were members of the firm of Harlow, Spencer & Company. But that court found from the evidence that D. R. Francis &

Brother took the note of Harlow, Spencer & Company before its maturity *in payment* of an antecedent indebtedness of a greater amount due from Harlow, Spencer & Company to D. R. Francis & Brother ; or that if they took it as collateral security merely, they granted at the time of taking it, to Harlow, Spencer & Company, an extension of time, so that they became even under the rule of *Goodman v. Simonds* (19 Mo. 107), as qualified by the latter decision in *Deere v. Marsden* (88 Mo. 512), takers for value, in such a sense that they took it discharged of antecedent equities between the original parties to it, and consequently held it under such circumstances as entitled them to enforce it by the sale of the land under the deed of trust. But the supreme court found that it was not clear from the evidence how much of the indebtedness, owing by Harlow, Spencer & Company to D. R. Francis & Brother in payment of, or as security for, which the note had been turned over by the former to the latter, remained unpaid, and held that D. R. Francis & Brother were entitled to enforce the security of the deed of trust to the extent of the amount due to them from Harlow, Spencer & Company.

What this amount was, if anything, was thus the question which the decision of the supreme court left to be determined upon another trial.

The second trial resulted in like manner in a decree for the plaintiff as against the defendants composing the firm of D. R. Francis & Brother, awarding to the plaintiff the injunction for which he prayed ; but this decree was set aside on affidavits on the ground of surprise. A third trial has again resulted in a like decree for the plaintiff, from which the defendants composing the firm of D. R. Francis & Brother prosecute the present appeal. Before the last trial, the plaintiff, by leave of court, amended his petition by interlineation so as to charge that D. R. Francis & Brother acquired the note on the twenty-first of February, 1882, which was after its

maturity. The answer of D. R. Francis & Brother set up that they acquired the note on the ninth day of February, 1882 (which would be before its maturity), for a valuable and ample consideration and without any notice of the equities existing between the parties to it. Before the last trial the plaintiff also filed an amended reply. Three paragraphs were stricken out on motion of defendants composing the firm of D. R. Francis & Brother ; but the court overruled their motion to strike out the fourth paragraph of it and they saved an exception. This paragraph which the court refused to strike out set up in substance that since the commencement of this suit the note in question had been paid by Harlow, Spencer & Company to D. R. Francis & Brother. The learned judge of the trial court filed a short opinion in which he placed his refusal to strike out this fourth paragraph on the ground that section 3535 of the Revised Statutes authorized this matter, arising subsequently to the trial, to be set up in a reply. This section of the statute reads as follows : ''An answer or replication may allege facts which have occurred since the institution of the suit.'' We are of the opinion that this ruling of the circuit court was technically erroneous. A party must, under our system of pleading, recover upon the cause of action stated in his petition, and he cannot recover upon a cause of action stated in his reply. The provision of the statute above quoted was not, we think, intended to change the office of a reply, which is that of a denial or a confession and avoidance of matter set up in the answer ; nor does the existence of this provision touching the answer and reply necessarily avoid the conclusion that in a suit in equity the petition may be amended so as to set up a new state of facts arising subsequently to the commencement of the suit, which may entitle the plaintiff to the relief which he seeks. In such a case he could not, of course, recover full costs, but his recovery in respect of costs would be limited to

those costs arising in the proceeding subsequently to his pleading this new matter.

But it does not follow from this that the error complained of would be one which would authorize a reversal of the judgment. The office of a pleading is to give notice to the opposite party of the ground on which the pleader intends to reply, and where this notice has been given, and an issue has been made upon the pleading in which it has been given, and the issue has been fully and fairly contested at the trial, it does not appear that the party against whom the contest is finally determined is entitled to a reversal of the judgment merely because his antagonist notified him of the ground of his contention in a reply, instead of notifying him of such ground in his petition. Such an objection would not touch the substantial merits, since a reversal and another trial upon the same issue formally set up would probably lead to the same result. The case, therefore, seems to be within the statue of jeofails. R. S., secs. 3775, 3582.

It is true that a plaintiff cannot have relief outside of the scope of his petition, and if this were a case where the plaintiff had recovered any species of relief against the complaining defendants outside the scope of the case made by his petition, it would be different. But here, in a round way, the petition sets up that this note was invalid by reason of its being founded on an unlawful consideration as against the original makers of it, and also as against the endorsees of it, wherefore the plaintiff is entitled to an injunction against the enforcement of the deed of trust given to secure it. The decree which has been rendered awards him such an injunction and is therefore within the general scope of the petition.

At the trial two issues were submitted to a jury: (1) Whether D. R. Francis & Brother received the note in question before maturity, and the jury found that they received it after maturity. (2) Whether it had

been paid subsequent to the commencement of this suit, and the jury found that it had been so paid. The court declined to adopt so much of the verdict as found that D. R. Francis & Brother had acquired the note after maturity. Objection having been made that the court erred in submitting the issue of payment to the jury under the ruling of the supreme court in *Adams v. Helm*, 55 Mo. 468, the court proceeded, independently of the verdict of the jury upon this point, to make its own finding, which was that the note had been paid as between Harlow, Spencer & Company and D. R. Francis & Brother subsequently to the commencement of this action. If any error was committed in submitting the question of payment to the jury, this action of the court in finding the issue independently of the verdict of the jury, discharged the error, even under the holding of the supreme court in *Adams v. Helm, supra.*

But we do not agree with the conclusion reached by the circuit court upon this issue. The evidence adduced by the defendants upon this trial distinctly showed that this note, together with nineteen others, had been given to them as collateral security for an indebtedness due to them by Harlow, Spencer & Company under an arrangement that Harlow, Spencer & Company, who knew their customers, should collect these collateral notes and turn the moneys over as collected to D. R. Francis & Brother, and that in this way the indebtedness of Harlow, Spencer & Company to D. R. Francis & Brother had been reduced to a balance due on January 1, 1888, in the sum of $1,127.17. This is the distinct and unequivocal testimony of S. R. Francis, one of the defendants, and there is nothing whatever which contradicts his testimony except evidence detailed by three witnesses, one of them the plaintiff, one of them one of his attorneys and one of them a bystander, of two casual remarks made by the defendant, D. R. Francis, to the effect that his firm had no further interest in the

litigation. On the other hand we have the unequivocal testimony of one member of the firm in support of a detailed account submitted in writing, with nothing whatever in the attending circumstances of the case impugning the credit of the witness or the commercial honesty of the defendants. Against this we have these loose declarations, concerning which it may be said that it is, perhaps, the most uncertain kind of evidence, because witnesses are liable to misunderstand such remarks, or misinterpret the sense in which they are made ; because, even if made under the circumstances here detailed, they would in no sense amount to an estoppel, but are entirely consistent with the conclusion that the party making them may have supposed at the time that the state of the accounts was such that his firm was substantially reimbursed ; and especially because a party can never know when such evidence is to be sprung upon him, and can never have his memory refreshed or guarded in such a manner as to meet it. It appears distinctly that, subsequently to the time when these declarations are alleged to have been made, D. R. Francis, in an interview with the plaintiff, submitted to him an account in which he claimed that the indebtedness due his firm from Harlow, Spencer & Company had not been paid off, and in which he offered to settle this litigation, if the plaintiff would pay the balance to which the other defendants testified upon this trial.

We recognize the principle that in cases in equity we defer on the facts very considerably to the conclusion of the trial court which had the witnesses before it and observed their manner of giving their testimony. There seems to be a tendency on the part of the supreme court to enlarge this principle, and to lean, in equity cases, to a considerable extent upon the conclusion of fact arrived at by the trial judge. We do not wish to give a narrow application to this rule ; but, giving it a reasonable application, we are of opinion that it is our

Crawford v. Spencer.

duty to reverse this case on the ground that the trial court erred in holding that the note in controversy had been paid.

We have felt an inclination to end this litigation by directing a decree in the circuit court; but the evidence on several points is in such a state that we think it would be more satisfactory if this cause were again tried. The evidence adduced on behalf of D. R. Francis & Brother is unsatisfactory in so far as they fail to give an intelligent explanation of what became of the other notes which were turned over to them by Harlow, Spencer & Company, together with this note, in the transaction of the twenty-first of February.

Moreover, the circuit court appears to have made no finding upon the issue whether D. R. Francis & Brother acquired the note in controversy before or after maturity. The jury found that it was actually received by them on the twenty-first of February, 1882, which was the day after its maturity. The court disregarded this finding and also the other finding of the jury, that the note had been paid, but, independently of the verdict, decided the issue of payment in the same way in which the jury had decided it. The decision of the trial court thus seems to have turned on the issue of payment, ignoring the other issues as not necessary to be decided. Our view that the court erroneously found that the note had been fully paid, renders it necessary that the other issue should be decided, for if they took the note after maturity, they took it subject to the infirmities which attended it in the hands of Harlow, Spencer & Company, and hence cannot enforce it by a foreclosure of the deed of trust. The evidence as to the time when D. R. Francis & Brother originally came into possession of the note is distinct to the effect that it was either on the ninth or tenth of February, which was before its maturity; but it would have been more

satisfactory if they had been able to show an entry on their books on that date showing its receipt. The evidence is also clear that they originally took it in part payment of the indebtedness of Harlow, Spencer & Company to them. The evidence as to the character in which they continued to hold it is, however, very blind. It seems to warrant the conclusion that in a subsequent settlement with Harlow, Spencer & Company *they sold it back* to Harlow, Spencer & Company, and then again received it from Harlow, Spencer & Company with nineteen other notes of other parties payable to Harlow, Spencer & Company, the twenty notes aggregating the sum of $13,000.51,—the whole being received as collateral security for a note of Harlow, Spencer & Company to them for $6,503.76. This second transaction took place on the twenty-first day of February, 1882, which was one day after the maturity of the note in controversy. If it shall turn out on another trial that these are the facts, the question for decision will be whether, where one holds paper for value under one contract, and subsequently that contract is settled, and a new contract is entered into between the same parties, for the performance of which the paper is pledged to the party who before owned it, the original delivery or the date of the new contract determines the rights of the holder? The question, we take it, is this: Did D. R. Francis & Brother wholly part with the title to the note in controversy on February 21, when the second transaction took place, so as to invest Harlow, Spencer & Company with a right of its absolute disposition? If so, a retransfer to them as pledgees, after maturity of such note, fixes the quality of their title as of that date. If, on the other hand, the arrangement between the parties was such that the holding and control of the note by D. R. Francis & Brother were never discontinued, but the character of the holding simply was changed by the

second transaction,—that is to say, if, from the date of the first delivery to them of said note, they never parted with the control thereof or some title therein,—then their equities are governed by the date of the first transfer.

The judgment will be reversed and the cause remanded. All the judges concur.