EWING HILL, Respondent, v. WILLA V. JOHNSON, Appellant.

St. Louis Court of Appeals, December 17, 1889.

1. **Contracts:** DEALINGS IN "FUTURES." If a contract for the purchase or sale of a commodity is made with the intention on the part of both buyer and seller that there should be no delivery of the commodity, but merely a speculation in its price, and a settlement by the payment, by the losing party, of the difference between the contract price and the market price at the time with reference to which the adjustment is made, such contract is a wagering contract and is illegal.

2. ———: ———: RIGHTS OF BROKERS. If one, who makes such a contract, acts through a broker, who is cognizant of the unlawful intention of the parties, such broker cannot recover from the principal for outlays made by him in the transaction; nor can a broker, making contracts for the purchase of a commodity, recover from his principal for his outlays in the transaction, if it was understood between him and his principal, when he was directed or authorized to make the contracts, that settlement under such contracts should be made, not by the delivery of the commodity, but only by the payment of such difference in prices.

3. **Evidence:** OF INTENTION. The intention of the parties respecting this matter is to be gathered not altogether from their assertions and statements, but also from the attending circumstances.

4. ———: BOOKS OF ACCOUNT. When a broker, authorized to buy commodities, makes the purchase through another broker, and the entries of the transactions in his books of account are made up wholly from returns received by him from such other broker, and not from any personal knowledge of the transactions, no testimony concerning these entries is competent.

5. ———: ACCOUNT RENDERED. But an account of such transactions, rendered by the broker to his principal, whether drawn from such entries or from other sources, is competent evidence, if the principal has assented to its correctness, or has retained it for an unreasonable time without objecting to it.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Geo. R. Lockwood* and *Eben Richards, Jr.*, for the appellants.

(1) The instructions given by the court of its own motion are ambiguous, misleading, and ignore facts essential to recovery. *Birtwhistle v. Woodward*, 95 Mo. 115; *Waddingham v. Hulett*, 92 Mo. 528; *Muehlhausen v. Railroad*, 91 Mo. 344; *Vanhooser v. Berghoff*, 90 Mo. 487; *Bank v. Overall*, 90 Mo. 410; *Bank v. Murdock*, 62 Mo. 70; *Thompson v. School District*, 71 Mo. 495; *Crews v. Lackland*, 67 Mo. 619. (2) The first, fourth and fifth instructions asked by defendant, went to the issues raised by the general denial of the answer, and should have been given. *Cavender v. Waddingham*, 2 Mo. App. 551; *Stewart v. Goodrich*, 9 Mo. App. 125; *Wilkerson v. Fornham*, 82 Mo. 672; *Irwin v. Williar*, 110 U. S. 499; *Embry v. Jemison*, 131 U. S. 336; *Crawford v. Spencer*, 92 Mo. 498. (3) There was evidence tending to show that the contracts which plaintiff claimed to have made at the request of defendant were gambling contracts, and, therefore, the second and third instructions, asked by defendant, should have been given. *Cockrell v. Thompson*, 85 Mo. 510; *Crawford v. Spencer*, 92 Mo. 506; *Kent v. Miltenberger*, 13 Mo. App. 503; *Ream v. Hamilton*, 15 Mo. App. 577; *Irwin v. Williar*, 110 U. S. 499; *Embry v. Jemison*, 131 U. S. 336.

*Thos. A. Russell*, for the respondent.

The burden of proof, as to the defense set up, was on the defendant. *Kent v. Miltenberger*, 13 Mo. App. 503; *Teasdale v. McPike*, 25 Mo. App. 341; *Crawford v. Spencer*, 92 Mo. 498. To sustain it he must have shown that all the contracting parties contemplated that there should be no actual delivery. *Teasdale v. McPike, supra; Cockrell v. Thompson*, 85 Mo. 510. 518. It is not sufficient to show that the broker knew that

his principal did not mean to receive or deliver the commodity. *Cockrell v. Thompson, supra; Kent v. Miltenberger, supra.*

THOMPSON, J., delivered the opinion of the court.

This was an action to recover a balance claimed to be due on an account "for money loaned, and money advanced and paid by plaintiff for defendant at his instance and request." The answer set up, as an affirmative defense, that the transactions embraced in the account were gambling transactions, known in the commercial world as "dealings in options" or "futures" in cotton, pretended to be bought and sold by the plaintiff for account of the defendant; that, although the contracts of purchase and sale, made by the plaintiff with the unknown parties through whom he effected them, were regular in form, yet they were not made in good faith, but were illegal, immoral, contrary to public policy and void, because there was never any intention between the parties thereto actually to deliver any cotton thereunder, but it was intended, at the expiration of the times agreed upon, to settle in money for the differences between the prices agreed upon and the market price of that quantity of cotton at the time of the settlement; that it was the defendant's intention, at said times, to speculate and gamble in the rise and fall of the price of cotton, and that this intention was known to the plaintiff; that the plaintiff had no authority from defendant to enter into any other than wagering contracts in his behalf; that the contracts actually entered into by the plaintiff with the said unknown persons were wagering contracts, and illegal, immoral and void; and that any money, claimed to have been paid out by plaintiff for account of defendant, was in furtherance of said illegal and immoral purposes, and likewise void and of no binding effect. This defense was put in issue by a reply.

The case was tried before a jury, and the plaintiff had a verdict and judgment, from which the defendant prosecutes this appeal. At the trial, the court instructed the jury, of its own motion, among other things, that, "under the evidence, the defense that the transactions mentioned in the evidence were invalid, for the reason that it was not the intention to receive any cotton, fails, and the jury will not consider that defense." The court also refused several instructions, tendered by the defendant, and predicated upon the hypothesis that these were wagering contracts, the intention of the parties being neither to receive nor deliver any cotton, wherefore the plaintiff could not recover.

We, therefore, take it that the essential inquiry in this case is whether there was any evidence tending to show that the plaintiff and the defendant *both* understood that no cotton was to be delivered, but that the transactions were to be "rung out," to use the slang of this kind of business, or to be settled by the payment of the "differences" between the market price and the agreed price.

This question is to be determined entirely upon the evidence adduced by the plaintiff. The defendant offered no evidence. The evidence, which was adduced, consisted of the testimony of the plaintiff himself; of the testimony of the plaintiff's bookkeeper, who kept his accounts, and of the deposition, including the cross-examination, of the defendant, which deposition was put in evidence by the plaintiff. This deposition of the defendant, which the plaintiff thus made his own evidence, states, in substance, that the general nature of the transactions, which are the subject of this suit, was that of an operation in the future price of cotton; that the defendant never authorized the plaintiff actually to buy or sell cotton; but authorized him to buy "futures" in cotton for the defendant; that the plaintiff's idea was a speculation in the future price of cotton, to be settled by the payment of the difference; that the

plaintiff never expected, nor intended, that cotton
would be delivered; that prices on the New York mar-
ket were to govern in settlement; that plaintiff never
actually received or delivered any cotton, as far as the
defendant knows or believes; that the defendant was
speculating in the future price of cotton, believing that
the future market price would be higher than at the
time of making the order, and from time to time
instructing the plaintiff to make future contracts for
the defendant at New York; that plaintiff "must have
been in line with that general idea;" that the plaintiff
did not report any prices of cotton to the defendant,
but that he, from time to time, reported purchases of
"futures," in compliance with the defendant's orders;
that the defendant directed the plaintiff to buy "cotton
futures," the number of bales named being named only as
a basis of settlement; that he did not direct the plaintiff
to buy the cotton for him at a given price; that he
expected the price of "cotton futures" to govern the
settlement, and not the price of cotton; that there was
a material difference between the price of cotton and
the price of "cotton futures,"—"they have different
market values;" that the price of cotton futures is not
necessarily governed by the price of cotton; that the
defendant expected to pay the difference between the
price at which he bought, and the price at which the
contract was closed, if the speculation should go against
him, and that, if it should go in his favor, he expected
the plaintiff to pay the difference. Among other
things, the defendant, in his deposition, said: "I do
claim that I am not indebted to Mr. Hill on account of
the purchase of any cotton bought for me. But I do
acknowledge that I am indebted to Mr. Hill for an
amount that may represent the wager lost upon
speculation upon cotton futures, made through him."

The testimony of the plaintiff, on the other hand,
taken as a whole, would tend to show that he received
orders from the plaintiff to purchase cotton, which

orders he executed through his correspondent in New York, by whom the purchases were made on the New York cotton exchange. But the plaintiff acknowledged that no cotton was actually delivered to the defendant. He ordered the cotton sold out before the time of delivery arrived. Although the defendant received no cotton, the plaintiff's New York correspondent may have received and delivered cotton on the transactions, and, doubtless, did. He testified that 'the defendant never intimated to him that the cotton was not to be delivered, and that he merely transmitted the defendant's instructions to his correspondents at New York, for them to execute on the New York cotton exchange.

It is perceived that, if the evidence of the defendant was to be believed, the defendant employed the plaintiff merely to purchase "cotton futures" for him, for the purpose of speculation, and did not employ him to purchase cotton. The presumption is that the plaintiff understood the terms of the employment as they were delivered. We are of the opinion that the foregoing evidence presents a case, in which a jury ought to be allowed to say whether the parties intended to engage in actual sales and purchases, or in mere gambling transactions, which were to be closed out by the settlement of the "differences" between the agreed price and the actual price at the time of settlement. The law on this subject is now pretty well settled in this state, although much difficulty arises in applying it in actual cases.

The governing principle laid down in *Crawford v. Spencer*, 92 Mo. 498, which is the last decision of the supreme court on this question, is, that *both parties* to the contract must *intend*, at the time when the contract is made, not to receive or deliver the commodity purchased or sold, but to make a settlement on the substantial basis of what *would have been* made or lost, having reference to the market price, if the commodity were actually received or delivered.

It cannot escape attention that this last decision of the supreme court has taken a step in advance of previous decisions in this state in making the circumstance, which vitiates the contract, the knowledge, *intent* or *understanding* of the parties to it, and not merely their unlawful *agreement*. In *Kent v. Miltenberger*, 13 Mo. App. 503, 510, it was distinctly affirmed that the mere fact, that the party, employing the broker to buy or sell for him for future delivery, has no expectation or intention of delivering or receiving, but only contemplates speculative wagers upon the fluctuations in the market, to be settled by the payment of differences, and that the broker is fully cognizant of and participates in this expectation and intention, and actually abets it with knowledge of the purpose of his employer, does not preclude the broker from maintaining an action against his employer to recover his advances and commissions. In *Cockrell v. Thompson*, 85 Mo. 510, 518, the supreme court, quoting this among other cases, distinctly re-affirmed this doctrine, in the following language: "If the agent is authorized to, and does, make a valid contract of sale or purchase for his principal, which, however, he knows the principal means to close as a mere wagering venture on the fluctuations of the market, and if, by direction of the principal, he afterward does close the transaction by the payment of losses, there is no legal impediment in the way to a recovery by him of the amount so paid, with a usual and reasonable allowance for services rendered in the transaction."

But in *Crawford v. Spencer*, 92 Mo. 498, our supreme court adopt the doctrine of the supreme court of the United States in *Irwin v. Williar*, 110 U. S. 499, which that court expressed in the following language: "It is certainly true, that a broker might negotiate such a contract, without being privy to the illegal intent of the parties to it, which renders it void, and, in such a case, being innocent of any violation of the law, and not

suing to enforce an unlawful contract, has a meritorious ground for the recovery of compensation for services and advances. But we are also of opinion that, when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself on behalf of either, in forwarding the transactions.'' Our supreme court also restated their own view in the following language : ''It is true the contracts were all made in the names of the brokers, the name of the real principal not appearing; that they were in writing, and, under the rules of the exchange, the purchaser had the right to call for the commodity; but they were made by the plaintiff's brokers, in compliance with their understanding with him, and it is believed with an implied understanding with the persons with whom the deals were made, that no grain was to be delivered. The law is now well settled, that a sale of goods to be delivered in the future is valid; such a contract is valid, though there is an option as to the time of delivery, and though the seller has no other means of getting them than to go into the market and buy them; but, if, under the guise of such a contract, valid on its face, the real purpose and intention of the parties is merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but the difference between the contract and the market price only paid, then the transaction is a wager, and the contract is void. It is not enough to render the contract void that one party only intended by it a speculation in prices; it must be shown that both parties did not intend a delivery of the goods, but contemplated and intended a settlement only of differences. The burden of showing the invalidity of the contract rests upon the party asserting it.'' The court then distinguish their previous decision in *Cockrell v. Thompson*, 85 Mo. 513, on the ground that it

did not appear, nor was it alleged, that the contracts made were illegal, whereas the court say: "In the present case, we are satisfied that it was not only the understanding, with the plaintiff and his brokers, that the deals were mere speculations on prices, but that such was also the character of the contract, as between the brokers and the persons with whom they made the contracts." *Crawford v. Spencer*, 92 Mo. 498, 505, 507.

In this case the supreme court dealt with the subject as chancellors, and decided the question upon their opinion of the facts disclosed by the evidence, and held that the contracts were mere wagers and unlawful. A state of evidence that would justify such a decision by a court of equity would, of course, take the question to the jury in a court of law. We do not perceive any essential difference between the facts of the case as stated in *Crawford v. Spencer*, and the facts of the case before us. In both cases the intent of the principal and his broker was that the principal employed the broker merely to aid him in speculating in the future value of a commodity, without any intention that there should be an actual delivery. The following observations, which the supreme court made upon the facts of the case, are equally pertinent to the evidence in this case. "It is an undisputed fact in the case that not a grain of wheat or corn was ever delivered under the contracts in question. They were all closed out and settled by the adjustment of differences, and in all cases before the maturity of the contracts. That they were all mere speculations is not denied. The plaintiff made, and intended to make, no arrangement for the delivery or reception of any of the grain, and this was, at all times, well known to the brokers. * * * If we look to the bare assertion of the parties, on one side and the other, we might well conclude that the plaintiff had failed to make out a case; but if we look to the attending circumstances, which we must do, we can but conclude

that these transactions, as between the plaintiff and the brokers, were mere speculations upon the future price of wheat and corn, with a complete understanding on the part. of both, that no grain was, in any case, to be received or delivered." In reading this quotation it must be kept in mind that the relation of the parties to the action is different from that in the present case. In that case the party who had employed the brokers to conduct for him the illegal transactions had given a note and deed of trust in settlement, and was seeking in equity relief against his contract. Here he is defending in an action by the broker.

It must also be borne in mind that the decision in *Crawford v. Spencer, supra,* is moreover authority to the point, that the question is not to be judged by the bare assertion of the parties on the one side or the other, but that the *attending circumstances* must also be looked to. In addition to the statements of the defendant in his deposition, the fact, that no cotton was ever delivered or tendered to the defendant by the plaintiff in execution of any of these transactions, is certainly a material circumstance which the defendant was entitled to have submitted to the jury, together with his evidence, as bearing upon the question of the validity of the sales. This case seems to be more clearly a case where the question of intention of the parties to the contract, with reference to its validity, should be submitted to the jury, than was the case of *Ream v. Hamilton,* 15 Mo. App. 577, where this court held that it was a question for the jury. Indeed, if it was not a question for the jury in this case, I can hardly conceive of a case where it would be a question for the jury, unless in a case where the intent of the parties, which taints the contract under the rule above stated, were actually expressed in writing.

In this case, the plaintiff and defendant were dealing face to face here in St. Louis, and it, therefore,

seems to be of no importance what the plaintiff's brokers in New York may have thought or done. If the defendant's testimony is to be believed he gave no orders for the purchase of cotton, but gave orders for the purchase of "cotton futures," and the understanding between him and the plaintiff must have been that no cotton was to be delivered to or received by the defendant. The presumption would be that the plaintiff, through his brokers, executed the orders according to the intent of the defendant expressed to him, and the circumstance that no cotton was actually delivered confirms this presumption. On the whole, we think that, the learned judge erred in instructing the jury that this defense had failed.

Then, as to the instructions presenting this defense to the jury, we will say that we understand that the following instructions express the law as laid down in *Crawford v. Spencer*, 92 Mo. 498, and properly apply the law to the hypothesis of fact presented by the evidence in this case, and we are, therefore, of opinion that the court erred in refusing to give them:

"3. The court instructs the jury that, if they believe from all the facts and circumstances in evidence in this case, that the defendant, W. V. Johnson, employed the plaintiff, Ewing Hill, to buy cotton futures, and thereby speculate in the future price of cotton, and that under the contracts, which plaintiff may have actually made with third parties in filling such orders, no cotton was intended actually to be received or delivered by the parties to such contracts, but that it was the intention of said parties merely to settle for the differences in price, then plaintiff cannot recover in this action, and the jury will find for defendant.

"4. The court instructs the jury that if they believe from the evidence, that, at the time defendant instructed plaintiff to buy cotton futures for him, it was mutually agreed or understood between them that no

cotton was to be delivered or received in the settlement of such purchases, but they were to be settled by the payment of differences, then plaintiff is not entitled to recover and you will find for defendant.''

As it may become material upon another trial, we suggest that neither the plaintiff's book of accounts, nor any copy drawn from such book, is competent evidence for the purpose of showing the amount due by the defendant to the plaintiff, upon any theory which obtains in this state or elsewhere; for the reason that this book was not a book of *original entries*, that the bookkeeper, who kept the book and whose testimony was introduced in support of it, did not make the entries from original transactions within his own knowledge, but made them from accounts sales, transmitted by the plaintiff's New York correspondents to the plaintiff. The book was therefore not evidence, and no testimony concerning the entries therein should be received on another trial.

But we must further observe that, if the plaintiff or his bookkeeper drew up a statement of the plaintiff's account with the defendant, striking a balance, whether such statement was drawn from this book, or from whatever source, and presented this statement to the defendant, and he either assented to its correctness or did not object to it, or, being furnished with it, retained it for a considerable time without objection, in either of these cases the statement so furnished will be evidence to charge the defendant on the theory of his having admitted its correctness, and in the last case, (of his having retained it without objection for an unreasonable time), on the well-known rule relating to stated accounts. *Kent v. Highleyman*, 17 Mo. App. 9, and cases cited.

For the errors pointed out the judgment will be reversed and the cause remanded. All the judges concur.