GEORGE SCHNEIDER *et al.*

*v.*

VOLUNTINE C. TURNER.

*Filed at Ottawa October 31, 1889.*

1. CONTRACTS—*rule of construction.* Unless there is some uncertainty as to the meaning of a contract, there is no room for construction ; and when construction is resorted to, then all the parts of the instrument must be construed in such a way as to give force and validity to all of them, and to all of the language used, where that is possible; also, to give to the words their common and generally accepted meaning.

2. SAME—*varying the terms of written contract—by parol—the statute construed.* In the case of a written contract of sale, it is not competent to vary the terms of such writing by allegation and proof that no consideration was in fact paid or received for the agreement to sell, and thus show that the transaction was a mere offer without consideration, which should become an agreement only upon its acceptance and offer to perform by the holder.

3. The statute (chap. 98, sec. 9) does not authorize a *plaintiff* to prove a want of consideration for the purpose of varying the terms of his

contract. The right to vary or explain the consideration expressed in a written contract, or to prove that it never was paid, does not authorize the introduction of such testimony to affect the terms or validity of the contract.

4. SAME—*option to buy or sell in the future.* A writing was as follows: "In consideration of one dollar and other valuable considerations, receipt of which is hereby acknowledged, I hereby agree to sell to C D 1786 shares of the capital stock of the North Chicago City Railway, at $600 per share, if taken on or before the 15th day of December, 1885 :" *Held,* this was a contract for the refusal or privilege to buy the shares of stock at any time before December 15, 1885, at the price per share named. It was a contract to give to the holder an option to buy the shares of stock at a future time, which, but for section 130 of the Criminal Code, would be valid and enforceable.

5. Section 130 of the Criminal Code was not intended to make unlawful merely such option contracts as contemplate a settlement by differences,—or, in other words, merely gambling contracts,—as such contracts were illegal and void before such section was ever enacted. The statute goes much further, and makes all contracts of options to buy or sell, at a future time, any grain or other commodity, stock, etc., gambling contracts, and void, whether intended to be settled by differences or not.

6. Prior to this act it was lawful in this State to contract to have or give an option to sell or buy, at a future time, grain or other commodity. Such contracts were neither void nor voidable at the common law but the statute makes them void in Illinois.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

This is an action of assumpsit, by appellants, against appellee, begun in the Superior Court of Cook county. The original declaration consisted of eight special counts. The first four and the sixth were withdrawn. The remaining three are as follows:

*Fifth count*—"And whereas, also, the said defendant afterwards, to-wit, on the 11th day of November, 1885, at the place aforesaid, made and delivered to said plaintiffs a certain writing, in words and figures as follows, to-wit:

" 'Chicago, *November 11, 1885.*

" 'In consideration of one dollar ($1.00) and other valuable considerations, receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and Ferd W. Peck seventeen hundred and eighty-six (1786) shares of the capital stock of the North Chicago City Railway, at six hundred dollars ($600) per share, if taken on or before the 15th day of December, 1885.      V. C. Turner.'

"And plaintiffs aver, that thereafter, to-wit, the 14th day of December, 1885, at, to-wit, the county aforesaid, said plaintiffs tendered said defendant the aggregate price of said 1786 shares of capital stock mentioned in said writing, to-wit, the sum of $1,071,600, and said plaintiffs then and there requested said defendant to sell and deliver to said plaintiffs the aforesaid shares of stock; yet the said defendant then and there refused to deliver said shares of stock to the plaintiffs, and has since hitherto refused to deliver the same, whereby plaintiffs have been deprived of divers great gains and profits which would have accrued to them from the delivery of the said shares of stock."

*Seventh count*—"And whereas, also, the said defendant afterwards, to-wit, on the 11th day of November, 1885, at the county aforesaid, made, executed and delivered to said plaintiffs a certain instrument in writing, in the words and figures following, to-wit:" (Then follows a copy of the instrument set out in the fifth count.) "And plaintiffs further aver, that afterwards, to-wit, the 21st day of November, 1885, at the county aforesaid, the said defendant then and there agreed to and with said plaintiffs to modify the aforesaid agreement expressed in said writing, in so far as to provide that the payment by said plaintiffs for said 1786 shares of capital stock should be made as follows, to-wit: The sum of $188,400 in cash, as and for payment for 314 shares of said capital stock, and for the sum of $883,200, representing the purchase price for the

remaining 1472 shares of said capital stock, said plaintiffs were to execute their joint promissory notes, due in one year from the date thereof, with interest at the rate of five per centum per annum, and deliver the same to said defendant, with the privilege to them, said plaintiffs, to pay any or all of said notes at any time before the same should become due, in sums of not less than $100,000 at any one payment that said plaintiffs should make before said notes should become due as aforesaid, and that said 1472 shares of said capital stock should be held by said defendant as collateral security to said promissory notes of said plaintiffs, for the payment thereof; and plaintiffs aver, that as to the other parts of the aforesaid writing, in all save and except the terms of payment of the purchase price for said capital stock, as so agreed by and between said plaintiffs and said defendant for the modification thereof in that behalf, as aforesaid, it was then and there agreed, by and between said plaintiffs and said defendant, that the same should remain and be in full force and virtue; and plaintiffs further aver, that thereafter, to-wit, on the 12th day of December, 1885, at the county aforesaid, they notified said defendant of their acceptance of the aforesaid agreement, as so modified; and plaintiffs further aver, that thereafter, to-wit, on the 14th day of December, 1885, to-wit, at the county aforesaid, the said defendant notified said plaintiffs that he would refuse to receive said amount of the purchase price for said shares of capital stock,—that is to say, said sum of $188,400 in cash, and the joint promissory notes of said plaintiffs for said sum of $883,200, due in one year, etc.; and plaintiffs aver, that said defendant then and there waived any tender by said plaintiffs of said cash and promissory notes, though said plaintiffs were then and there ready and willing, as they have since hitherto been ready and willing, to pay and deliver the same to said defendant, and said defendant then and there refused to deliver the said plaintiffs said shares of capital stock, or any part thereof, whereby plaintiffs have lost," etc.

*Amended eighth count*—Same as the seventh to and including a copy of said writing, and then follows this averment: "And said plaintiffs aver, that said written agreement was made and signed by said defendant without any good or valuable consideration, and that said defendant did not receive, nor did said plaintiffs pay, the one dollar, or the other valuable consideration mentioned in said writing; and they further aver, that said plaintiffs did afterwards, to-wit, on the 14th day of December, 1885, tender said defendant the aggregate price, aforesaid, of said 1786 shares of stock, to-wit, the sum of $1,071,600, and requested said defendant to deliver to them the aforesaid shares of capital stock; and they further aver, that at the time of said offer on the part of said defendant, and at the time of said tender on the part of said plaintiffs, said defendant was the owner of or had the control of, and the right to contract for, the sale of said shares of stock. Plaintiffs further aver, that said offer was made by defendant because it would probably require so much time to make examination into the condition, property and franchises of the North Chicago City Railway Company, and to ascertain the value of such property; and the time for the performance of said contract, and its acceptance, was not so fixed for the purpose of speculating upon the rise or fall in the value of said stocks, and that there was no intention on the part of said plaintiffs, and there was no agreement or understanding between plaintiffs and defendant, at that time or thereafter, that said contract should be performed by the settlement or adjustment of the difference in value between the contract price and the market price, if there should be any, of such stocks at the time fixed for such acceptance and performance; yet the said defendant then and there refused to deliver said shares of stock to the plaintiffs, and has since hitherto refused to deliver the same, whereby plaintiffs have been deprived of divers great gains and profits which would have accrued to them from the delivery of the said shares of stock."

To the fifth and eighth amended counts defendant filed general and special demurrers, the special ground alleged as to each count being, that the instrument declared on was made in violation of section 130 of the Criminal Code of this State. To the seventh count, among others, he filed his sixth special plea, and to it plaintiffs filed a demurrer. The demurrers to the fifth and eighth counts were sustained, and that of plaintiffs to the sixth plea was carried back to the seventh count, and that count also held bad. Plaintiffs standing by these counts, judgment was rendered against them for costs. They appealed to the Appellate Court for the First District, where the judgment of the Superior Court was affirmed, and they again appeal.

Messrs. SMITH & PENCE, for the appellants:

The contract in question is not an option or offer, but it is an executory contract of sale,—the time of its performance being made of the essence thereof. The time of its performance becomes a condition subsequent, the non-performance of which would authorize the vendor either to rescind the contract, or, standing upon the contract, to sue for damages for its breach. Until rescission, the contract is binding on both parties, and an offer to perform, by the vendee, before the time indicated, would prevent its rescission. 1 Benjamin on Sales, (Kerr's ed.) p. 260, book 2, chap. 1; 1 Chitty on Contracts, (11th Am. ed.) 11; *Barton* v. *McLean,* 5 Hill, 256; *Ives* v. *Hazzard,* 4 R. I. 14; *Aiken* v. *Railroad Co.* 26 Barb. 298; *Van Rensselaer* v. *Smith,* 27 id. 140; *Spalding* v. *Hallenbeck,* 30 id. 298; *Andrews* v. *Pontue,* 24 Wend. 289; *Davies* v. *Wilkinson,* 10 A. & E. 98; *Butler* v. *Thompson,* 92 U. S. 412.

This is a contract to sell, binding on both parties, but with a right of rescission on the part of the vendor in case the vendee refuses to perform, but with no right on the part of the vendee to rescind the same by non-performance. The contract is mutual as to both parties, and binding on both,

3—130 ILL.

and the right of rescission in favor of the vendor is simply a security or penalty in his hands by which to secure performance. He need not insist on his right to rescind, but may sue for damages for such non-performance, as may also the vendee, which makes the contract mutual. *Spalding* v. *Hallenbeck,* 30 Barb. 292; *Dunham* v. *Pettee,* 4 Seld. 508; *Mason* v. *Caldwell,* 5 Gill, 196; *Carpenter* v. *Westcott,* 5 Cow. 270; *Raymond* v. *Caton,* 24 Ill. 123; *Moore* v. *Smith,* id. 513.

The statute provides that want of consideration may be proved. *Honeyman* v. *Jarvis,* 64 Ill. 366; *Insurance Co.* v. *Rees,* 29 id. 272; *Mann* v. *Smyser,* 76 id. 365; *Gage* v. *Lewis,* 68 id. 604; *Morris* v. *Tillson,* 81 id. 616; *Wolf* v. *Fleetmeyer,* 83 id. 418.

A contract that does not involve in its performance the settlement thereof by an adjustment and payment of the difference between the contract price and the market value at the time of the supposed performance, is not a gambling contract *per se,* or under the statutes of this State, because it is not affected by the vice of a gaming intention. *Pickering* v. *Cease,* 79 Ill. 328; *Tenney* v. *Foote,* 4 Bradw. 594, and 95 Ill. 99; *Pearce* v. *Foote,* 113 Ill. 228; *McCormick* v. *Nichols,* 19 Bradw. 334; *Beveridge* v. *Hewitt,* 8 id. 467; *Coffman* v. *Young,* 20 id. 76; *Bigelow* v. *Benedict,* 70 N. Y. 202; *Mortimer* v. *McCallan,* 6 M. & W. 58; *Thacher* v. *Hardy,* L. R. (4 Q. B. Div.) 685; *Kent* v. *Mittenberger,* 17 Mo. App. 507; *Whitesides* v. *Hunt,* 97 Ind. 191; *Cooper* v. *Niel,* 13 Weekly Notes, (Eng.) 125.

Messrs. COOPER & GURLEY, also for the appellants:

As to the meaning of the words "game," "gamble" and "gambling contract," see Johnson's and Webster's Dictionaries; 4 Bacon's Abridgment, title "Gaming;" Dewey on Contracts for Future Delivery, 14, 18, 19-23; *Tatman* v. *Strader,* 23 Ill. 493.

The section in question, when truly interpreted, will not bear the construction put upon it by the court below. Dewey

on Contracts, 40; *Kent* v. *Mittenberger*, 13 Mo. App. 503; *Wolcott* v. *Heath*, 78 Ill. 437; *Pickering* v. *Cease*, 79 id. 330; Endlich on Interpretation of Statutes, sec. 400.

The statute being intended to punish only those who should be parties to option contracts containing the element of gambling, the contract here, even if the court should hold it to be within the literal words of the statute, should be excepted from the operation thereof, because it had no taint of gambling or wagering about it. Potter's Dwarris on Stat. 212; *Breevers* v. *Blougher*, 14 Pet. 198; *Thompson* v. *State*, 15 Ind. 449; *Dunnell* v. *State*, 2 id. 658; *United States* v. *Kirby*, 7 Wall. 482.

Messrs. GOUDY, GREEN & GOUDY, for the appellee:

The contract set forth in the declaration is an option, and therefore void, under the statute of this State. Dewey on Contracts, 84; Crim. Code, sec. 130; *Wolcott* v. *Heath*, 78 Ill. 433; *Pixley* v. *Boynton*, 79 id. 351; *Logan* v. *Musick*, 81 id. 415; *Lyon* v. *Culbertson*, 83 id. 33; *White* v. *Barber*, 123 U. S. 392.

Where an instrument recites a consideration, it can not be shown by extrinsic evidence that there was, in fact, no consideration, for the purpose of annulling the instrument or changing its legal import. 1 Greenleaf on Evidence, secs. 275, 276, 305; *Davis* v. *Symonds*, 1 Cox's C. C. 402; *Stackpole* v. *Arnold*, 11 Mass. 27; *Kimball* v. *Walker*, 30 Ill. 482; *McCloskey* v. *McCormick*, 37 id. 66; *O'Brien* v. *Palmer*, 49 id. 72; *Morris* v. *Tillson*, 81 id. 607; *Jones* v. *Buffum*, 50 id. 277.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

The sufficiency of the fifth and seventh counts depends entirely upon the construction to be placed upon the instrument therein declared on; the eighth, whether or not that instrument can be aided by averment and parol proof.

The question upon which doubt is expressed in the opinion of the Appellate Court, viz., whether or not the paper set out

in the several counts should be regarded as an agreement, or
a mere proposition for a sale, is eliminated from the case as
here presented, counsel for appellants admitting the correct-
ness of the decision below in that regard, contending, however,
that although a contract between the parties, of the date it
bears, it is not an option contract, but a contract of purchase
and sale of the shares of stock specified. It is said to be "an
executory contract of sale, the time of its performance being
of the essence thereof, the non-performance of which would
authorize the vendor either to rescind the contract, or, stand-
ing upon it, sue for damages for the breach." In support of
this proposition many authorities are cited, and among them
*Andrews* v. *Pontue*, 24 Wend. 289, *Ives* v. *Hazard*, 4 R. I. 27,
*Spalding* v. *Hallenbeck*, 30 Barb. 299, *Barton* v. *McLean*, 5
Hill, 256, and *Wain* v. *Walters*, 5 East, 10, all of which are
referred to in the opinion of the Appellate Court as holding
the instrument in question, though executed by only one of
the parties, but delivered to and accepted by the other, a con-
tract, and not a mere offer. A careful examination of these
and other like cases cited will show, that while they sustain
the position in support of which they were cited by the Ap-
pellate Court, they throw no light whatever upon the question
as to whether that contract should be construed to be a con-
tract for an option, or one of sale and purchase.

Looking at the instrument itself, it seems impossible to give
it the construction contended for by appellants, without vio-
lating plain and well settled rules of law applicable to all in-
struments in writing. It must first be determined that there
is some uncertainty as to the meaning of the contract, other-
wise there is no room for construction. But if construction
can be resorted to, then all parts of the instrument must be
construed in such a way as to give force and validity to all of
them, and to all of the language used, where that is possible;
also, to give to the words their common and generally accepted
meaning. Here, however, the construction contended for ig-

nores the first clause of the instrument entirely, and gives to the word "if," in the last sentence, an entirely different meaning from that ordinarily attached to it, thus making the contract in effect read, "I hereby agree to sell to George Schneider, Walter L. Peck and Ferdinand W. Peck 1786 shares of the capital stock of the North Chicago City Railway stock, at $600 per share, *to be taken* (or they to take the same) on or before the 15th of December, 1885." So read, it would undoubtedly, under the authorities cited, be an absolute contract of sale of the shares of stock. But, reading the entire instrument, the question arises, if appellee in fact meant by the language, "I hereby agree to sell," that he then and there did sell the shares of stock, and if appellants, by accepting the instrument, thereby meant that they had then and there bought the same, where was the necessity for saying, "in consideration of one dollar," etc., "I hereby agree to sell?" Why not have said, "I have this day sold," or, as was said in the *Hazard case, supra,* "I agree to sell," etc., "at * * * $15,000?" And if the parties did intend, by the last clause, to make time of the essence of the contract, why say, "if taken," instead of using words showing a mutual agreement to take within a time limited?

The plain, unambiguous meaning of the contract (treating it as such) is, that appellants paid appellee a valuable consideration for the refusal or privilege to buy 1786 shares of stock of the North Chicago City Railway Company, at $600 per share, at any time on or before the 15th of December, 1885, —a contract heretofore of frequent occurrence in commercial transactions, perfectly legal and enforceable at common law. In the absence of section 130, no one, it seems to us, would hesitate to pronounce this a contract to give to appellants the option to buy railroad stock at a future time. The argument in support of the eighth amended count admits that such is its effect, on its face; but it is insisted it is competent to vary its terms by allegation and proof that no consideration was

in fact paid by appellants, or received by appellee, for the agreement to sell, and thus show the transaction a mere offer on the part of appellee, without consideration, which became an agreement only upon the acceptance and offer to perform on the part of appellants.   The general rule excluding parol evidence offered for the purpose of contradicting or varying the terms of a written instrument, is not questioned.   The validity of this count is based exclusively on the provisions of section 9, chapter 98, of the Revised Statutes, entitled "Negotiable Instruments."   That section provides that a defendant may plead want or failure of consideration to a suit on a note or other contract, for the purpose of defeating a recovery in whole or in part, when the same was given without consideration, or when the consideration has failed.   No authority is found in this section for permitting a *plaintiff* to prove a want of consideration, for the purpose of varying the terms of his contract.   This proposition is too clear for argument.   The parties must be held bound by the contract as they wrote it. 1 Greenleaf on Evidence, sec. 275.

The right to vary or explain the consideration expressed in a written contract, or to prove that it was never paid, does not authorize the introduction of such testimony to affect the terms or validity of the contract.   *O'Brien* v. *Palmer,* 49 Ill. 72; *Morris* v. *Tillson,* 81 id. 607.

Still it is most earnestly insisted that notwithstanding the instrument sued on is, on its face, an option contract, and although it can not be changed into a mere offer by parol proof, yet it is not violative of section 130, by proper construction of that section.   To maintain this position, it is insisted that by the prohibition of the statute, the legislature only intended to make unlawful such option contracts as contemplate a settlement by differences; that to come within the inhibition of section 130 the contract must be a gambling contract; that the option here meant is the option or right to elect whether to accept or deliver the stock or other commodity, or pay the

difference between the contract price and the market price when the same should be accepted or delivered under the terms of the agreement. The language of the section, so far as applicable to this question, is as follows: "Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain or other commodity, stock of any railroad or other company, * * * shall be fined, * * * and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

The first question which suggests itself in considering the construction of this statute contended for by appellants is, if their construction is the true one, why was the statute enacted at all? Nothing is more clearly and firmly established by the common law, than that all gambling contracts are void. It is equally well settled, that all contracts for the purchase and sale of property with the understanding or agreement of the parties (whether that agreement is expressed on the face of the contract or exists by secret understanding) that the property is not to be delivered or accepted, but the contract satisfied by an adjustment of the difference between the contract and market prices, are mere wagers, or gambling contracts, and void. (3 Am. and Eng. Ency. of Law, p. 873, and cases cited in note 1; *Cothran* v. *Ellis et al.* 125 Ill. 496.) Long prior to the passage of this statute it had been repeatedly so decided by this court. Therefore the section, as construed by counsel for appellants, serves no purpose whatever. If their construction is correct, when the legislature declared that all contracts made in violation of section 130 should be considered gambling contracts, and void, it only condemned contracts which were already gambling contracts, and void. Certainly more than this was intended. It must be presumed that the object of the legislature was to declare that unlawful which theretofore had been lawful. Prior to this act it was lawful to contract to have or give an option to sell or buy, at a future time, grain or other commodity. Such contracts were

neither void nor voidable at the common law. The statute makes them unlawful and void in Illinois.

The case of *Biglow* v. *Benedict*, 70 N. Y. 202, cited by counsel for appellants, in which the contract sued on is admitted to be substantially the same as the one before us, well illustrates the effect of our statute upon option contracts of this character. In that case the language of the contract was as follows: "Know all men by these presents, that I, Charles B. Benedict, for and in consideration of the sum of $250, good and lawful money of the United States, to me in hand paid, the receipt of which is acknowledged, do agree to receive from W. C. Biglow, at any time within six months from date he may choose to deliver the same, $2500 in gold coin of the United States, for which I agree to pay to the said Biglow ninety-five per cent premium on the dollar, or at the rate of $195 in good current funds for each and every $100 of coin. *The said Biglow does not contract to deliver the coin, but pays the $250 for the privilege of delivering or not, at his option.*" In the absence of statutory provision on the subject of option contracts, the New York Court of Appeals held the Biglow contract valid and binding on the parties. We can perceive no good reason why it should not have done so. As we have before said, such contracts are valid at common law. But suppose the validity of that contract is tested by the foregoing section of our statute. Will it be seriously contended that a recovery could be had in this State? If that contract is not in the teeth of section 130 of our Criminal Code, we are at a loss to perceive how one could be drafted that would be.

But it is said this court is committed to the construction insisted upon, and in support of the statement, *Wolcott et al.* v. *Heath*, 78 Ill. 437, *Pickering et al.* v. *Cease*, 79 id. 330, *Pearce* v. *Foote*, 113 id. 228, and *Tenney* v. *Foote*, 95 id. 99, are cited. We have carefully re-examined each of these cases, and are unable to discover anything in them inconsistent with the view here expressed. The only case in which it can be said that

this court has given its approval to a definition of the word "option," as used in the statute, is that of *Tenney* v. *Foote, supra.* In that case a written opinion, rendered by the late Judge McALLISTER on the trial in the circuit court of Cook county, was, on appeal to the Appellate Court for the First District, adopted as the opinion of the Appellate Court, and on a further appeal to this court, the same opinion was approved. In that opinion Judge McALLISTER quotes the definition of the word "option," as used in the stock exchange, from Webster's Dictionary, (ed. of 1872, p. 917,) as follows: "A stipulation; privilege to a party, in a time contract, of demanding its fulfillment on any day within the specified time." And the Judge proceeds to say: "In practice, on the stock exchange it was often the intention of the parties that no stock should be delivered, but the transaction settled upon differences. These became common, and the English statute was aimed at its repression, because it was, in effect, gambling. Our statute is directed against the same evil, and extends to transactions in grain and other commodities as well as stock, so that the word 'option,' as used in the statute here, taken with the context, *means a mere choice, right or privilege of selling or buying, and it is the contract for such choice, right or privilege of selling or buying at a future time any commodity, the statute was intended to prohibit, as contradistinguished from an actual sale or purchase with the intention of delivering and accepting the commodity specified."* The logic of this opinion is certainly against the position sought to be maintained. *White* v. *Barber,* 123 U. S. 392, and *Osgood* v. *Bauden,* 75 Iowa, 550, are also authorities against the construction contended for. See, also, *Webster* v. *Sturges,* 7 Bradw. 560.

We agree fully with counsel for appellants as to the object of the statute. It manifestly is to break down the pernicious practice of gambling on the market prices of grain and other commodities. How is this object sought to be accomplished? There was and is nothing illegal or even immoral in an option

contract, within itself. The evil aimed at, nevertheless, grew out of such contracts. As said by Judge McALLISTER, in the opinion referred to in *Tenney* v. *Foote,* "in practice it was often the intention of the parties that no stock should be delivered, but the transaction settled upon differences;" and by Judge ANDREWS, in the *Biglow case, supra,* "contracts of this kind may be mere disguises for gambling." In this case the parties *might* have intended, if appellants called for the stock, to settle on differences. The contract *could* have been made the disguise for gambling on the future price of stock of the North Chicago City Railway. The question is not, did they so intend, but, did not the legislature regard such contracts as lying at the root of the evil aimed at, and strike at them. The treatment is heroic, but the evil was most malignant.

We can neither read out of the contract language which the parties put in it, nor into the statute expressions which the legislature, for a manifest purpose, omitted. The contract, tested by the statute, is void, and therefore each count of the declaration obnoxious to the demurrer interposed.

The judgment must be affirmed.

*Judgment affirmed.*