:39 LRA 836

WILLIAM S. POPE

v.

JOSEPH HANKE.

*Filed at Mt. Vernon November 23, 1894—Rehearing denied May Term, 1895.*

1. TRIAL—*intent of parties in grain purchase is for the jury.* The intention of the parties to a purchase of grain, in respect to the future delivery, where there is a claim that the intent was to make an option contract to be settled by payment of differences, is a question for determination by the jury, on a consideration of the evidence.

2. BROKERS—*cannot recover for services in option contract.* A broker who is privy to the unlawful design of the parties to an option contract, and brings them together for the purpose of making it, can not recover for any services or losses incurred in the transaction.

3. BILLS AND NOTES—*negotiable note given on option contract—innocent holder.* A negotiable note given for differences on a settlement of an illegal option contract, which contract the statute expressly declares shall be void, is not itself void in the hands of an innocent holder for value before maturity, unless the statute expressly or by necessary implication so declares.

4. CONFLICT OF LAWS—*comity yields to public policy.* Comity between different States does not require a law of one State to be executed in another, where it would be against the public policy of the latter State.

5. SAME—*note valid where made not necessarily enforcible in Illinois.* The validity of a negotiable note in the hands of a *bona fide* holder in the State where the contract was made, notwithstanding its consideration was the settlement of differences under an illegal option contract, does not require the enforcement of such note by the courts of this State, in which the statutes make such a note void even in the hands of a *bona fide* holder, and the transactions out of which it arose, criminal.

*Pope* v. *Hanke,* 52 Ill. App. 453, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Clinton county; the Hon. A. S. WILDERMAN, Judge, presiding.

This is an action upon three notes, amounting in the aggregate to $8881.53, all dated "St. Louis, Mo., Oct. 1, 1890," signed by appellee, payable to the order of D. P. Grier Grain Company at "St. Louis, Mo.," in 2, 4 and 6 months after date respectively, with interest at seven per cent per annum, and indorsed by the payee therein. Besides the counts upon the notes, the declaration contains the common counts. The pleas are the general issue and two special pleas. The first special plea is that the notes were given by defendant to D. P. Grier Grain Company on settlement of an amount due "on a certain gaming contract whereby the said D. P. Grier Grain Company gave the defendant a certain option to sell certain wheat and corn which the said defendant did not intend to deliver nor the said D. P. Grier Grain Company intend to receive, the said notes being given to pay said D. P. Grier Grain Company the difference between the market price on the day of settlement and the price at which said defendant took said option," concluding that the contract is contrary to the statute and the notes void. The second special plea is of the same tenor as the first, except that it alleges the contract was made in the State of Missouri, and concludes that, under the statute of Missouri, the notes are wholly void.

Replication to the special pleas is, that the notes sued on were made and delivered by defendant to said D. P. Grier Grain Company, and by said company were sold and assigned by indorsement thereon for a valuable consideration to plaintiff, and were delivered to and received by him before the maturity of the same, without any notice of defect or illegality of consideration for the same, all without the State of Illinois, in the city of St. Louis, in the State of Missouri, and by the laws of Missouri are valid in the hands of plaintiff, etc. Further replication is that the cause of action is founded on a legal contract, and not upon any gambling contract.

The case was tried, by agreement before the circuit judge without a jury. The court was asked to hold as law in the decision of the case seven propositions in writing which were submitted by plaintiff's counsel, and of these five were held as law, and two were refused. The refused propositions are as follows:

1. "The notes sued on are Missouri contracts, and under the laws of that State they were, up to the time of their maturity, negotiable paper. As the rights and obligations of the parties became fixed by the laws of that State, the courts of this State will declare and enforce them. If, therefore, before they matured, the plaintiff took them for value, and without notice of any infirmity in or defense to them, then he became and is an innocent purchaser of them, for value before maturity, and is entitled to recover in this case the full amount of them, regardless of what the transaction may have been out of which they arose.

2. "In order to bring purchases and sales of grain for future delivery within the prohibition of the statutes of Missouri, there must be a mutual intention on the part of the seller not to deliver and on the part of the buyer not to receive the grain. In the absence of such mutual intention the law will protect the rights of the innocent party to the transactions and will enforce them as against the guilty, and if the broker of the guilty party to such transaction acts in good faith for his principal, believing his principal to be dealing in good faith, and without notice or knowledge to the contrary, he is not *particeps criminis* with his principal, and he also is entitled to recover losses on such transactions as against his principal. But whether the notes in the hands of the Grier Grain Company were subject to the defense set up in this case or not, if, as a matter of fact, they were acquired by the plaintiff before maturity, for value, and without knowledge of any infirmity or defense, they became valid and

binding obligations on the defendant, in the hands of the plaintiff as an innocent purchaser."

Exceptions were taken to the refusal of these propositions. Plaintiff·objected to all testimony tending to elicit the consideration of the notes, or to impeach their validity, or to show the character of the dealings between the defendant and the D. P. Grier Grain Company. Exceptions were taken to the overruling of these objections. Plaintiff introduced in evidence the Act of the Legislature of Missouri approved May 9, 1889, entitled "An Act to prohibit fictitious and gambling transactions in agricultural products and other commodities and stocks and bonds," and the sections thereof incorporated into the Revision of 1889 of the Statutes of that State, and also the opinions in the following cases : *Crawford* v. *Spencer*, 92 Mo. 498; *Cockrell* v. *Thompson*, 85 id. 510, and *Hill* v. *Johnson*, 38 Mo. App. R. 383. The Circuit Court found the issues for the defendant, and rendered judgment in his favor for costs. This judgment has been affirmed by the Appellate Court. The present appeal is prosecuted from such judgment·of affirmance.

H. D. LAUGHLIN, R. C. LAMBE, and M. P. MURRAY, for appellant:

Even if these were gambling contracts as between Hanke and the Grier Grain Company, Pope, as an innocent purchaser, took them stripped of this defense. *Sondheim* v. *Gilbert*, 117 Ind. 71; *Conklin* v. *Woolbridge*, 3 Scam. 388; *Adams* v. *Woolbridge*, 3 id. 255; *New* v. *Walker*, 108 Ind. 365; *Shirley* v. *Howard*, 53 Ill. 455; *Town of Eagle* v. *Kohn*, 84 id. 296; *Day* v. *Stewart*, 6 Bing. 109; Tiedeman on Com. Paper, sec. 189, chap. 10 ; Chitty on Bills, (11th Am. ed.) 90, 92, 95; *Crawford* v. *Spencer*, 92 Mo. 498; *Bank* v. *Tinsley*, 11 Mo. App. 498; 3 McCreery, 316; 1 Daniel on Neg. Inst. (4th ed.) sec. 195, p. 218.

VAN HOOREBEKE & FORD, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The judgment of the Appellate Court, affirming the judgment of the Circuit Court, is conclusive upon the issues of fact tendered by the pleadings. The transactions between the D. P. Grier Grain Company and the appellee were mere speculations upon the future prices of grain. The contracts for the delivery and sale of the grain in the future were not made with the intention that any grain should be received or delivered, but with the understanding that each transaction should be settled by the payment of the difference between the contract price and the market price at the time fixed. It is well settled, that all such contracts are mere wagers or gambling contracts, and are void. (*Schneider* v. *Turner*, 130 Ill. 28; *Cothran* v. *Ellis*, 125 id. 496; *Barnard* v. *Backhaus*, 52 Wis. 593; *Crawford* v. *Spencer*, 92 Mo. 498; *First Nat. Bank of Lyons* v. *Oskaloosa Pack. Co.* 66 Iowa, 41). Such is the law in Missouri, where the notes sued on are admitted to have been executed. In *Crawford* v. *Spencer*, *supra*, the Supreme Court of Missouri said: "The law is now settled, that a sale of goods to be delivered in the future is valid; such a contract is valid though there is an option as to the time of delivery, and though the seller has no other means of getting them than to go into the market and buy them; but if, under the guise of such a contract, valid on its face, the real purpose and intention of the parties is merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but the difference between the contract and market price only paid, then the transaction is a wager, and the contract is void." Such also is the law in Illinois where the present suit has been brought. In *Schneider* v. *Turner*, *supra*, we said: "All contracts for the purchase and sale of property with the understanding or agreement of the parties, (whether that agreement is expressed on the face of the contract

or exists by secret understanding), that the property is not to be delivered or accepted, but the contract satisfied by an adjustment of the difference between the contract and market prices, are mere wagers or gambling contracts, and void." All gambling contracts are void at common law. (Idem).

The evidence tends to show, that the notes were given for the balances found to be due upon the settlement of the differences above referred to. It is said, that both parties must be shown not to have had the intention to deliver the goods, and to have had the intention of settling the differences only. Proof of such mutual intention was held to be necessary in *Crawford* v. *Spencer, supra.* The propositions held as law in favor of the plaintiff in the present case distinctly announce that, in order to bring purchases and sales of grain for future delivery within the prohibition of the statutes of Missouri, there must be a mutual intention on the part of the seller not to deliver and on the part of the buyer not to receive the grain. This intention may be established not merely by the assertions of the parties, but by all the attending circumstances of the transactions. (*Crawford* v. *Spencer, supra*). Here, appellee swears, that, when he dealt with D. P. Grier Grain Co., he dealt in options and went to them for that purpose; that the three notes sued upon "were given for a balance for options," and that he "had bought grain and it fell in value, and the three notes made the difference." He had a mill at Trenton, but its capacity was only 200,000 bushels per annum; and yet the accounts and statements introduced in evidence show the volume of transactions between the parties to have amounted, in a period of a little more than three months, to 2,190,000 bushels of wheat, 1,240,000 bushels of corn, and 60,000 bushels of oats; there could have been no delivery of all this grain at the mill. The proof tends to show that all the purchases and sales during one month of the time were made on the same day, or within

a day or two. The question of intention is a question for the jury to be determined by a consideration of all the evidence. (*Hill* v. *Johnson*, 38 Mo. App. 383).

It is claimed, however, by appellant that the D. P. Grier Grain Company acted merely as brokers in making sales and purchases for appellee, and that they acted in good faith, whatever may have been the intention of appellee. The propositions held as law by the trial court state, that the transactions would be legal and binding, if the Grain Company, at the request of Hanke, bought and sold grain for his account in good faith, and with no understanding that it was not to be received or delivered. The evidence tends to show, that the sales and purchases were conducted by the brokers in their own names, that Hanke's name was never disclosed as principal in the transactions, and that it was never disclosed to him what persons the brokers were dealing with in his behalf. The brokers were parties to the illegal contracts, and privy to the illegal intent of their principals. The notes were given to them for differences growing out of the illegal ventures. Hence, the present case comes within the rule announced in *Irwin* v. *Williar*, 110 U. S. 499, where it was said: "When the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services or losses incurred by himself, on behalf of either, in forwarding the transactions."

But it is claimed that what has been said applies only to the immediate parties to the contract; and that, although the payee in these notes, the D. P. Grier Grain Company, may have no right of recovery upon them, yet the illegality of their consideration cannot be urged as a defense against appellant, upon the alleged ground that the notes are negotiable paper, and were purchased by the appellant before maturity for a valuable consideration in good faith and without notice of their illegal

consideration.   The case of *Crawford* v. *Spencer, supra,* is referred to as authority for the contention, that such notes are valid in the hands of an innocent holder under the laws of Missouri.   It was held in that case, that a provision in the Revised Statutes of Missouri of 1879, making all notes void "where the consideration is money or property won at any game or gambling device," did not apply to such contracts as those here involved, and that a note, based upon such an illegal consideration as that for which the notes here sued upon were given, was not void in the hands of a *bonâ fide* endorsee.

After the *Crawford* case was decided the legislature of Missouri passed an Act on May 9, 1889, "to prohibit fictitious and gambling transactions in agricultural products," etc.   Certain sections of this Act appear in the Revised Statutes of Missouri as sections 3931, 3932, 3934, 3936, etc.   Said section 3931 provides that "all purchases and sales, or pretended purchases and sales, or contracts and agreements for the purchase and sale of   *   *   * grain,   *   *   * either on margin or otherwise, without any intention of receiving or paying for the property so bought or of delivering the property so sold, and all the buying or selling, pretended buying or selling, of such property, on margin or on optional delivery, when the party selling the same, or offering to sell the same, does not intend to have the full amount of the property on hand or under his control to deliver upon such sale, or when the party buying any of such property, or offering to buy the same, does not intend actually to receive the full amount of the same if purchased, are hereby declared to be gambling and unlawful, and the same are hereby prohibited."   Section 3932 provides, that it shall not be necessary, in order to commit the offense defined in section 3931, that both the buyer and seller shall agree to do any of the acts above prohibited, but the said offense shall be complete against any corporation, partnership or person thus pretending or offering to sell or buy,

whether the offer to sell or buy is accepted or not. Section 3936 provides that "all contracts made in violation of this Act (article) shall be considered gambling contracts, and shall be void." Section 3931 also provides, that any person found guilty of violating the provisions thereof shall be fined in a sum not less than $300.00, nor more than $3000.00. The foregoing provisions were in force when the notes sued on in this case were executed and when the transactions, upon which they are based, occurred.

The point is made by counsel for appellant, that there is no statute in Missouri which declares notes, given for money becoming due by reason of the transactions forbidden in section 3931, to be void instruments; and that, therefore, such notes cannot be regarded as void as against *bonâ fide* holders thereof. We have been referred to no decision in Missouri made since the passage of the Act of 1889, which determines the question of the validity of such a note in the hands of an innocent holder. The general rule is, that illegality of consideration, even though such consideration grows out of an act prohibited by statute, cannot be set up against the *bonâ fide* assignee of a note, unless the statute expressly, or by necessary implication, declares the note to be void. (1 Daniel on Neg. Ins. secs. 197, 808; 3 Kent's Com. marg. pp. 79, 80; Story on Prom. Notes, sec. 192; 1 Parsons on Notes and Bills, p. 218; Tiedeman on Com. Paper, secs. 178, 280; 2 Rand. on Com. Paper, sec. 517). The provision in the Missouri statutes of 1879, which was considered in *Crawford* v. *Spencer, supra*, was, that "all * * * bonds, bills, notes and securities, when the consideration is money or property won at any game or gambling device, shall be void, and may be set aside," etc. (Rev. Stat. Mo. 1889, sec. 5211). But as such purchases and sales and contracts and agreements as are mentioned in said section 3931 have been decided to be not embraced within the terms of that provision, and as it has not been shown that

there is any statute in that State declaring notes, given for money due on such purchases and sales or contracts and agreements, to be absolutely void, the question arises, whether such notes are void in the hands of innocent holders merely because the purchases and sales, or contracts and agreements, which form their consideration, are declared to be void.

Some of the expressions in the text books are to the effect that, where a statute expressly declares the contract or transaction which forms the consideration óf the note or bill to be void, the note or bill is illegal and void even in the hands of a *bonâ fide* holder for value ; but the weight of authority sustains the position that, while such note or bill is void as between the parties to it, it is not void as against the holder for value without notice unless the statute also declares the note or bill itself to be void. Mr. Daniel in his work on Negotiable Instruments (sec. 808) thus succinctly states the doctrine : "In all cases where the statute does not declare the instrument void, *bonâ fide* ownership for value being proved, the holder is entitled to recover." The same view was expressed by this Court in *Town of Eagle* v. *Kohn*, 84 Ill. 292, where we said : "The doctrine is laid down generally, that in those cases in which the legislature has declared that the illegality of the contract shall make the security, whether bill or note, void, the defendant may insist on such illegality, though the plaintiff took the bill or note *bonâ fide*, and gave a valuable consideration for it. (Chit. on Bills, 115, and cases cited in note). But unless it has been so *expressly* declared by the legislature, illegality of consideration will be no defense in an action at the suit of a *bonâ fide* holder without notice of the illegality, unless he obtained the bill or note after it became due. (Id. 116). * * * Illegality is not the circumstance which avoids negotiable securities in the hands of a *bonâ fide* holder, as it is seen that illegality of consideration, in the absence of express declaration by

the legislature that the securities shall be void, will be no defense against a *bonâ fide* holder, without notice of the illegality. It is by force of the peremptory words of the statute declaring them void, that they are held to be void in the hands of an innocent endorsee without notice." In the cases of *Traders' Bank of Chicago* v. *Alsop*, 64 Iowa, 97, and *Barnard* v. *Backhaus*, 52 Wis. 593, it appears that there were statutes declaring the notes, based upon the illegal considerations, to be void. (See also *Vallett* v. *Parker*, 6 Wend. 615). To hold such notes void, in the absence of a statutory provision declaring them void, would be to materially obstruct the circulation of negotiable instruments, and thereby seriously embarrass mercantile transactions.

Hence, we are inclined to think that, upon the record presented in this case where it appears that the appellant was a purchaser before maturity for value of the notes sued upon in good faith and without notice of any defects, the defense set up in the special pleas would not have been good as against him if the suit had been brought in Missouri. The Supreme Court of that State in *Crawford* v. *Spencer*, *supra*, say: "The note is not void in the hands of an endorsee before maturity, simply because based upon such a consideration."

This being so, can a recovery be had in this State upon the notes here sued upon? The general rule is, that the validity of a contract is to be governed by the law of the place where it is made, (*Phinney* v. *Baldwin*, 16 Ill. 108; *Mumford* v. *Canty*, 50 id. 370); and in the application of this principle to notes, it is held that the laws of the State where a note is made will govern as to the defenses, which can be set up against a recovery thereon. (*Evans* v. *Anderson*, 78 Ill. 558; *Anstedt* v. *Sutter*, 30 id. 164; *Yeatman* v. *Cullen*, 5 Blackf. 240; *Trimbey* v. *Vignier*, 1 Bingham's New Cases, 151; *Woodruff* v. *Hill*, 116 Mass. 310.)

While it is true, however, that one State or nation will recognize and execute the laws of another through

comity, yet the principle of comity does not permit the enforcement of foreign laws, which are prejudicial to the interests of the State where they are sought to be enforced. A contract made in one State will not be enforced in another, when to do so would contravene the criminal laws of the latter State, or would be against the express prohibition of its laws. Comity between different States does not require a law of one State to be executed in another when it would be against the public policy of the latter State. No State is bound to recognize or enforce contracts which are injurious to the welfare of its people, or which are in violation of its own laws. (*Mumford* v. *Canty, supra;* Story on Conflict of Laws, sec. 327; *Faulkner* v. *Hyman,* 142 Mass. 53; *Hill* v. *Spear,* 50 N. H. 253; *Fisher* v. *Lord,* 63 id. 514).

Section 130 of the Criminal Code of Illinois provides, that "whoever contracts to have or give to himself or another the option to sell or buy at a future time any grain * * * or forestalls the market by spreading false rumors to influence the price of commodities therein, or corners the market, or attempts to do so in relation to any of such commodities, shall be fined not less than $10.00, nor more than $1000.00, or confined in the county jail not exceeding one year, or both; and all contracts made in violation of this section shall be considered gambling contracts and shall be void." (1 Starr & Cur. Stat. page 791). Section 131 provides as follows: "All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages or other securities or conveyances made, given, granted, drawn or entered into or executed by any person whatsoever, where the whole or any part of the consideration thereof shall be for any money, property, or other valuable thing won by any gaming or playing at cards, dice, or any other game or games, or by betting on the side or hands of any person gaming, or by wager or bet upon any race, fight, pastime, sport, lot, chance, casualty, election, or unknown or con-

tingent event whatever, or for the reimbursing or pay-
ing any money or property knowingly lent or advanced,
at the time and place of such play or bet, to any person
or persons so gaming or betting, or that shall, during
such play or betting, so play or bet, shall be void and of
no effect." (Idem. page 792). Section 136 provides that
"no assignment of any bill, note, bond, covenant, agree-
ment, judgment, mortgage, or other security or convey-
ance as aforesaid, shall, in any manner, affect the defense
of the person giving, granting, drawing, entering into or
executing the same, or the remedies of any person inter-
ested therein." (Id. page 794).

We held in *Chapin* v. *Dake,* 57 Ill. 295, that a draft
assigned in payment of a gambling debt was void in the
hands of a subsequent *bonâ fide* holder. In *Tenney* v. *Foote,*
4 Bradw. 594, it was held, that the notes described in
section 131 included notes the consideration of which, in
whole or in part, arose out of the gambling transactions
mentioned in section 130; and that a note, given for such
differences as are hereinbefore described, was void under
section 131. The opinion of the Appellate Court in *Ten-
ney* v. *Foote, supra,* was approved by this Court in *Tenney*
v. *Foote,* 95 Ill. 99, and the latter case has been since ap-
proved in *Pearce* v. *Foote,* 113 Ill. 228. (See also *Cothran*
v. *Ellis,* 125 Ill. 496; *Soby* v. *The People,* 134 id. 66).

It thus appears, that, under the statutes of this State
and the decisions construing them, the notes sued on are
absolutely void. The contracts, upon which they are
based, are declared to be gambling contracts, and void.
The transactions, in which they have their origin, are
prohibited by the criminal code of the State; and those
engaging in them are subject to punishment by fine or
imprisonment. We have held, that dealing in futures or
options is productive of mischievous results, and have
characterized it as a "dangerous evil," and "a vice that
has in recent years grown to enormous proportions."
(*Pearce* v. *Foote, supra*). We have also said, that such

dealing "is not only contrary to public policy, but it is a crime—a crime against the State, a crime against religion and morality, and a crime against all legitimate trade and business," and that there is demanded "at the hands of the courts of the country a faithful and rigid enforcement of the laws, which have been ordained for the suppression of this gigantic evil and blighting curse." (*Cothran* v. *Ellis et al. supra*).

In view of the character of the transactions here involved as thus characterized, we think that our own law should be applied in determining whether a recovery should be had in this suit; and that comity does not require us to ignore the statute of Illinois, under which these notes are void even in the hands of an innocent holder, in order to permit a defense which would be allowed under the law of a foreign State. The enforcement of such foreign law would contravene the criminal code of this State, and would be in opposition to its public policy, and to the express prohibition of its statutory enactments, and would be prejudicial to the interests of its people. We are, therefore, inclined to hold that no recovery can be had upon the notes, and that the rulings of the Circuit Court were correct.

The judgments of the Circuit and Appellate Courts are accordingly affirmed.

*Judgment affirmed.*