Bensinger v. Kantzler.

$\overline{112}$ $\overline{293}$
r214s 589

# Moses Bensinger, et al., v. Frederick M. Kantzler, et al.

## Gen. No. 11,185.

1. CONTRACT—*when void provision in, destroys its entire validity.* Where several parties join in an entire contract and the promises of each party are dependent upon the promises of every other party thereto, so that all the promises of each party form an entire consideration for the promises of the other, then if any substantial provision of the contract is illegal, the entire contract is void.

2. OPTION CONTRACT—*when particular provision constitutes an.* Where a contract contains a provision by which certain parties thereto agree, for a valuable consideration, that at the expiration of a specified period they will or will not sell certain corporate stock as they may see fit, such contract is void because of such provision, inasmuch as the same constitutes an option contract contrary to the statute.

3. PUBLIC POLICY—*when contract is contrary to.* A provision in a contract by which the holders of the controlling interest in a corporation agree that they will elect certain stockholders, officers thereof, for and during a certain period at a specified salary, is contrary to public policy and void.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Heard in this court at the March term, 1903. Reversed. Opinion filed February 25, 1904.

**Statement by the Court.** This is an action of assumpsit brought by appellees, for the use of Kantzler, against appellants upon the following contract:

"This agreement made and entered into at Chicago, Illinois, this 18th day of April, A. D. 1893, by and between Frederick M. Kantzler, Nicolas Stoll and Arnold Stoll, all of Chicago, Illinois, party of the first part, and Anton F. Troescher, of the City of New York, Moses Bensinger, of the City of Chicago, and Julius Balke, Junior, of the City of Cincinnati, Ohio, party of the second part,

Witnesseth: It is mutually agreed by and between the parties hereto that the Garden City Billiard Hall, located on East Madison St., Chicago, together with all the property therein, with the good will thereof and the leases of the premises whereon the same is situated, shall be sold and transferred to Frederick M. Kantzler, for and in consideration of the sum of One Dollar. That thereafter an inventory shall forthwith be taken of all the stock, tools,

merchandise, machinery, fixtures, and office furniture now on hand at the factory of the Garden City Billiard Company, in Chicago, or elsewhere, at cost prices of the same respectively. Said second party jointly and severally agree that they will forthwith pay to said first party sixty per cent (60%) of the amount of said inventory, and in addition thereto the sum of Twenty-five Thousand Dollars ($25,000).

Said second party further agree and guarantee that the individuals comprising said party of the first part shall be re-elected for the period of five years to the offices of President, Treasurer and Secretary respectively, of said Garden City Billiard Table Company, and that their salaries shall be Two Thousand Dollars ($2,000) per annum each, payable monthly. They further agree and guarantee that at the expiration of five years from the date hereof they will pay to said party of the first part, their legal representatives or assigns, for Four Hundred (400) shares of the capital stock of said Company the book value thereof, which said book value said second party jointly and severally agree and guarantee shall not be less than Fifty Dollars ($50) per share (*Provided*, that any one or more of said individuals comprising said party of the first part may have the option to retain his proportion of said Four Hundred shares, and *Provided* he has faithfully and satisfactorily performed his duties under this agreement, renew his contract of service with said Garden City Billiard Table Company for an additional period of five years, at Two Thousand Dollars ($2,000) per annum, payable monthly).

Said party of the second part do further jointly and severally agree and guarantee that dividends shall annually be declared and paid on the capital stock of said Company not to exceed the amount of ten per cent (10%) of the par value thereof, from the earnings of said Company, Provided the net earnings for such year shall equal such ten per cent, but said dividends shall not be payable until the Company has funds. If the amount of the net earnings of said Company do not amount to ten per cent of the capital stock thereof for any given year, no dividend shall be declared for such year.

In consideration of the foregoing payments, agreements, guarantees and options, said party of the first part agree as follows:

1. They are to have absolutely all moneys, debts, claims, accounts and bills receivable now belonging to said Garden City Billiard Table Company, and they are to discharge

and pay all the debts, claims and bills payable now out-standing against said Garden City Billiard Table Company, and save said Company harmless therefrom, and during said liquidation the old books are to remain at the office of said Company. A bond in the sum of Fifty Thousand Dollars with J. M. Oliver and J. G. Earle as sureties shall be given conditioned to pay all said debts and liabilities.

2. Each individual comprising said party of the first part agrees for himself as follows: Frederick M. Kantzler shall serve as President of said Company for a period of five years from and after the date hereof, and devote to the duties of said office the same amount of time and attention, approximately, that he has devoted thereto for the period of five years last past.

Nicolas Stoll shall serve as Treasurer of said Company for a period of five years from and after the date hereof, and is to devote all his time and attention to advance the interests and welfare of said Company.

Arnold Stoll shall serve as Secretary of said Company for a period of five years from and after the date hereof, and shall devote his entire time and attention to advance the interests and welfare of said Company.

3. Said party of the first part shall forthwith on the payment of the money first aforesaid, deliver to said party of the second part Six Hundred (600) full paid shares of the capital stock of said Company.

It is further mutually agreed that the number of directors in said Company shall be forthwith increased to seven, and that each individual comprising said party of the first part, or the survivor or survivors of them, shall be annually elected a Director of said Company for said period of five years from and after the date hereof.

If the assets upon the taking of the inventory should be less than Thirty Thousand Dollars ($30,000) then a proportionate abatement shall be made from said Twenty-five Thousand Dollars and also from said guaranty of Fifty Dollars per share on said Four Hundred shares."

Signed and sealed by each of the parties appellant and appellee, and by one Julius Balke, Jr., who was not served and did not appear in the case.

The declaration sets up this contract *in haec verba*, and alleges a performance upon the part of appellees of the conditions therein contained on their part to be performed; that within four years from its date appellants wrongfully

deposed Kantzler from his position as president, and thereafter refused to pay him the salary of said office; and that April 18, 1898, Kantzler held and still hólds 190 shares of the capital stock of said company, which he then desired to transfer to appellants for the sum of $50 per share, in accordance with said contract, but appellants would not and will not take such stock and pay him the stipulated price thereof; to the damage, etc.

Appellants filed a plea of the general issue. The cause was submitted to the court for trial without a jury. Upon the hearing the court found the issues for appellees and assessed their damages at $14,599.43. A motion for new trial was overruled and judgment was entered upon the verdict. From that judgment this appeal was perfected.

MORAN, MAYER & MEYER, for appellants.

GEORGE W. WALL and WILLIAM SHERMAN HAY, for appellees; LEE & HAY, of counsel.

MR. JUSTICE BALL delivered the opinion of the court.

This contract is an entire one. After stating all that appellants bind themselves to do, it continues: " In consideration of the foregoing payments, agreements, guarantees and options, said party of the first part (appellees) agree as follows." Hence all of the promises of each party form an entire consideration for the promises of the other; and if any substantial part of the consideration is illegal, the entire contract is void. Douthart v. Congdon, 197 Ill. 349–355, and cases cited.

The provision in regard to the purchase of the four hundred shares of stock remaining in the hands of appellees was as follows: " They (appellants) further agree and guarantee that at the expiration of five years from the date hereof they will pay to said party of the first part, their legal representatives or assigns, for four hundred (400) shares of the capital stock of said company, the book value thereof, which said book value said second party jointly and severally agree and guarantee shall not be less than fifty dol-

lars ($50) per share, *provided*, that any one or more of said individuals comprising said party of the first part may have the option to retain his proportion of said four hundred shares." There is no uncertainty in this language, and hence there is no room for construction. It must be interpreted as it reads. It is evident that by this agreement, although appellants should desire and offer to purchase such stock for the agreed price and at the stipulated time, they could not do so, unless appellees then desired to sell the same. · There is here no agreement to sell upon the part of appellees. The utmost they do is to give themselves an option to sell their stock. They do not enter into an enforceable contract to sell, but do agree for a valuable consideration that at the expiration of the five years they will sell or not sell their stock, as they then may see fit.

Such a contract would not be illegal at common law; but by sec. 130, ch. 38, Criminal Code, it is provided: " Whoever contracts to have, or give to himself  *  *  *  the option to sell  *  *  *  at a future time any  *  .*  *  stock of any  *  *  *  company,  *  *  *  or attempts to do so,  *  *  *  shall be fined not less than $10, nor more than $1,000, or confined in the county jail not exceeding one year, or both, and all contracts made in violation of this section shall be considered gambling contracts, and shall be void."

In Schneider v. Turner, 130 Ill. 28, this section was passed upon. The contract there in issue read: " Chicago, November 11, 1885. In consideration of one dollar ($1) and other valuable considerations, the receipt of which is hereby acknowledged, I hereby agree to sell to George Schneider, Walter L. Peck and. Ferd. W. Peck seventeen hundred and eighty-six (1786) shares of the capital stock of the North Chicago City Railway, at six hundred dollars ($600) per share, if taken on or before the 15th day of December, 1885. (Signed) V. C. Turner." The Supreme Court held. that this was a contract to give to the holders an option to buy such stock at ·a future time; that at common law it would be valid and enforceable; but that under said section

130 it was illegal and void, that section making all contracts of options to buy or to sell at a future time gambling contracts and void.

In Corcoran v. Lehigh & F. Coal Co., 138 Ill. 390, appellee sold to appellant 12,000 tons of coal, and added to their offer: " Should you require any coal on our dock, will name you fifty cents per ton in advance of above price during the season, provided you purchase the above order from us."   Appellant sued for the non-delivery of a part of the 12,000 tons, and for refusal to furnish other coal on appellee's dock as appellant had required.   The court say : " We entertain no doubt as to the validity of the agreement between these parties for the purchase and sale of the 12,000 tons of coal.   We think it equally clear, that so far as there was an attempt to contract for coal to be delivered to plaintiff from the dock of the defendant, as plaintiff should require it, the agreement is void under our statute."

In the discussion of this question the decisions of the Supreme Court cited by appellees at first reading seem to change the rule so clearly laid down in Schneider v. Turner, *supra*, but we think they may be distinguished.

In Wolf v. Nat'l Bk. of Illinois, 178 Ill. 85, the bank sold certain bonds to appellant, and as a part of the deal gave him a written memorandum to the effect, " Should you desire to resell to us, during the month of January, 1897, we will buy them back from you at the same price."   The court held that the intention of the parties was to make a conditional sale with the right reserved to appellee to return the bonds if he desired during the month of January, 1897.   There was an actual sale and delivery of the bonds with a privilege on the part of appellant to resell them to appellee within the specified time.   " The transaction was one both reasonable and proper, and one not within or prohibited by the statute."

The cases of Ubben v. Binnian, 182 Ill. 508, and Skinner v. Osgood, 83 Ill. App. 454, are similar in their facts to those in the Wolf case; and were held to be controlled by the ruling therein.

In Schlee v. Guckenheimer, 179 Ill. 593, appellee bought ten cars of barley from appellant.   In the same contract appellant offered to sell to appellee 20,000 bushels more of like barley at a certain price by a specified date.   The Supreme Court say :   " The clause (above referred to) does not constitute a contract for an option, such as that in Schneider v. Turner, 130 Ill. 28.   *   *   *   This proposition or offer is similar to every-day business transactions among people of this state with reference to every character of commodities purchased for use."

In the case at bar the stock was never actually sold, it was never delivered, nor did the title to the stock ever pass to appellants.   The elements essential to a sale are wholly wanting.   The thing really done was the giving of a naked option for a consideration.   Such act is clearly within the prohibition of the statute, and therefore void.

The provision for the election of Kantzler as president of the company, of Nicolas Stoll as treasurer, and of Arnold Stoll as secretary thereof, each for the term of five years, and each for a salary of $2,000 per year, is against public policy.

Prior to the making of this contract the same men filled the same respective positions each at a salary of $1,500 per year.   There is nothing in the record to indicate that their duties after the contract was executed would be other or different than they were before.   Indeed the clear inference is that they would remain unchanged.   Kantzler says :   " I understood the salaries of myself and the two Stolls were raised as a part of the purchase money."   It follows that the company was to be burdened with the sum of at least $7,500 during this term of five years for the sole benefit of the parties to this contract.

The public policy of this state in regard to the control and management of corporations is shown by the act relating thereto.   It is therein provided that at the first meeting of the shareholders, directors shall be elected, and at each yearly meeting thereafter the shareholders shall fill all vacancies in the body of the directors.   It is made the duty

of these directors to select the officers of the corporation
and to fix their salaries. It is clear that it is the intention
of the law-making power that, from year to year, a ma-
jority of the shareholders, through their directors, should
control the management and policy of the corporation; and
that it was not intended such majority, or even all the
shareholders, at any time should have the power, by a con-
tract made between themselves for their own advantage, to
fix the status of the corporation for years to come, despite
all possible changing circumstances, as is attempted to be
done by this provision.

In McNulty v. Corn Belt Bank, 161 Ill. 446, a by-law
provided that the stock of the bank should be subject to be
voted in favor of all propositions submitted by the directors
to increase the capital stock, not exceeding $50,000, at any
one time or within a period of sixty days. The Supreme
Court declared: " This by-law is illegal and void, not only
because it seeks to keep the future action of the stockholders
in reference to the increase of stock in subjection to the
will of the original directors who passed the by-law, but
also because it attempts to limit the right to sell or transfer
stock by imposing unreasonable conditions."

"A contract in regard to elections in private corporations
is not legal if it provides that a lucrative corporate position
shall be given to one or more of the parties to the con-
tract." Cook on Stock and Stockholders, sec. 622 (3rd ed.),
and many cases cited in note 1.

In Cone v. Russell, 48 N. J. Eq. 208, a majority of the
holders of the stock of a corporation agreed that all their
shares of stock should be voted at the stockholders' meet-
ings, so that one of their number should be continuously
employed as its manager for the term of five years at a
salary of $2,500 per annum. The vice-chancellor says (p.
214): " The mere statement of the affair seems to me to
condemn it. The motive was in itself improper and unlaw-
ful. Servants of a corporation should be employed and
paid upon their merits, and buying votes for an office in a
corporation is of the same objectionable character as buying

them for public office. The same may be said of buying the right to control the business policy and management of the affairs of a corporation." The conclusion was that the contract complained of was void as against public policy.

In West v. Camden, 135 U. S. 507–520, it was agreed by one holding a majority of the stock of a corporation, that upon the purchase of the plaintiff's business by the corporation, the plaintiff should serve for a term of years as its vice-president and general manager at a specified salary. Upon his removal from office he brought suit for his salary. The court said: " We think that under no circumstances could the plaintiff recover in this action, for the reason that the alleged contract was void as against public policy. * * * It (the agreement) amounted to a stipulation on the part of the defendant that no contingency should happen which should require a change of management and a reduction of expenses."

To the same general effect are Woodruff v. Wentworth, 133 Mass. 309; Noel v. Drake, 28 Kans. 188; Mallory v. Mallory Wheel Co., 61 Conn. 131; Gage v. Fisher, 31 L. R. A. 557.

As against the doctrine of these cases appellees cite Faulds v. Yates, 57 Ill. 416. · A close reading of that case shows the Supreme Court decided nothing more than that a majority of the shareholders in a corporation can control its management—a proposition which no lawyer will contradict. It is to be noted that in the Faulds case the persons who were to be elected as directors were not named, how long they were to hold their several offices was not agreed upon, nor was the amount of their respective salaries determined. This case was cited with approval in Higgins v. Lansingh, 154 Ill. 375, but only to the point above indicated.

Lorillard v. Clyde, 86 N. Y. 384, may be said to sustain the contention of appellees, but the court does not cite an authority in support of its opinion. Nothing appeared in that case tending to show any direct financial advantage coming to either party to the contract. On the contrary,

the contract provides that the affairs of the corporation shall be managed in good faith and with economy, and that the commissions to be paid, are, as stated, to be the usual commissions. If this case supports the contention of appellees, it is opposed to the weight of authority, and is subversive of the principles upon which corporations are founded.

Stated in plain words, this provision constitutes a purchase and sale of the offices of president, secretary and treasurer of the company for the term of five years, at fixed salaries, without the consent of the company, (if that could be given,) and regardless of its interests. It is therefore illegal and contrary to public policy.

It is not necessary for us to pass upon the further contentions of appellants.

The judgment of the Circuit Court is reversed.

*Reversed.*